[No. A039762. First Dist., Div. Four. Sept. 29, 1988.]

SELF-INSURERS SECURITY FUND, Plaintiff and Appellant, v. ESIS, INC., et al., Defendants and Respondents.

1150

**COUNSEL**

Paul H. Dawes, Wynne S. Carvill, Joyce M. Norcini and Thelen, Marrin, Johnson & Bridges for Plaintiff and Appellant.

John Edward Hurley, Jr., John Reese, Andrew I. Port, Leslie G. Landau, McCutchen, Doyle, Brown & Enersen and William G. Frey for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—This appeal follows the dismissal with prejudice of the third amended complaint (complaint) of appellant Self-Insurers' Securi-

ty Fund (Fund) after the trial court sustained respondent William C. Gruber's (Gruber) demurrer to the complaint without leave to amend. The Fund maintains it has valid tort claims against Gruber individually on two theories: (1) breach of statutory duty and (2) negligent misrepresentation. We find no actionable negligence or breach of statutory duty against Gruber in his personal capacity and affirm.

## I. *Facts and Statutory Scheme*

Gruber is a former vice president of California Canners and Growers (CCG). CCG was a self-insured entity as defined in Labor Code[1] section 3700 et seq.[2] until it became insolvent in 1983. At all relevant times CCG was required annually to post security with the Director of the Department of Industrial Relations (director) in the amount of its estimated workers' compensation liabilities. (§ 3701; Cal. Code Regs.,[3] tit. 8, § 15250.) The amount of the security was determined by the director based on annual and interim reports filed by CCG in 1981 and 1982. (Tit. 8, §§ 15250, 15251, 15402.1.)

Under the statutory scheme, each self-insurer must file an annual report on forms supplied by the Department of Industrial Relations (DIR), and the report must be signed by the person administering the self-insurance plan as well as an officer or authorized employee of the self-insurer. (Tit. 8, § 15251.) The annual report form, set out in full in title 8, section 15252, contains the following attestation above the corporate officer signature line: "Under penalty of perjury, I declare that I have examined this report and to the best of my knowledge and belief it is true, correct and complete." Gruber signed both the 1981 annual report and the 1982 interim report (Reports), which were prepared for CCG by ESIS, Inc. (ESIS), a professional self-insurance administrator.

CCG instituted bankruptcy proceedings in 1983. At the time, following independent audit, it was determined that CCG's outstanding workers' compensation liabilities had been underestimated by over $1 million. The Fund was created in 1984 in response to the CCG bankruptcy, pursuant to section 3742. The Fund assumed CCG's workers' compensation obligations that year. The purpose of the Fund is to "provide for the continuation of workers' compensation benefits delayed due to the failure of a private self-insured employer to meet its compensation obligations when the employers'

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

[2] Section 3700 requires private employers to secure the payment of their workers' compensation liabilities either by obtaining insurance from an approved insurer or by becoming a self-insurer.

[3] All title references are to the California Code of Regulations.

security deposit is either inadequate or not immediately accessible for the payment of benefits." (§ 3740.)

## II. *Standard of Review*

Gruber demurred generally to the complaint, alleging it did not state facts sufficient to constitute causes of action against him. ■ In examining the sufficiency of a complaint against a general demurrer, we view the demurrer as admitting all material facts properly pled. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].) However, the demurrer does not admit the contentions, deductions or conclusions of fact or law. (*Air Quality Products, Inc.* v. *State of California* (1979) 96 Cal.App.3d 340, 347 [157 Cal.Rptr. 791].)

## III. *Standing and Subrogation*

At the outset we observe that the Fund would have a difficult time suing Gruber directly for negligence because the Fund did not exist at the time of Gruber's alleged wrongdoing. It would be problematic to hypothecate a duty of care to a nonexistent entity, the concept of which had not even been contemplated at the time of Gruber's involvement. ■ Hence, the Fund consistently has asserted its standing to sue Gruber under a theory of subrogation on the following rationale: Gruber contributed to the inadequacy of the security posted by CCG, thus harming CCG's employees[4] who are entitled to workers' compensation benefits; upon insolvency, the Fund assumed CCG's workers' compensation liabilities and, thus, was forced to absorb the shortfall created by Gruber's misfeasance, thereby becoming entitled to step into the shoes of CCG's employees and recover from Gruber, the alleged wrongdoer.

The 1984 legislation provides statutory authority allowing the Fund to pursue its claims against Gruber. ■ Pursuant to that legislation, the Fund was empowered "to bring an action against any person to recover compensation paid and liability assumed by the fund . . . ." (§ 3744, subd. (c), added by Stats. 1984, ch. 252, § 5.)[5] The purpose of subdivision (c) is to

---

[4] The Fund also attempts to claim Gruber harmed CCG and can pursue its subrogation claim as to CCG. This is not possible. The Fund has pled no damages to CCG for which the Fund could recover. On the contrary, the Fund has filed a claim for reimbursement against CCG in the bankruptcy proceedings and CCG still is responsible to the fund for obligations paid and assumed by the Fund. (§ 3744, subd. (a).)

[5] Section 3744, subdivision (c), was amended in 1986 to add to the above quoted sentence the following explanatory language delineating the types of "persons" the Fund could sue: "including, but not limited to, any excess insurance carrier of the self-insured employer, *and any person whose negligence or breach of any obligation contributed to any underestimation of the self-insured employer's total accrued liability as reported to the director.*" (Italics added.)

allow the Fund to seek legal action against others to recover moneys it expends in continuing an insolvent self-insured's compensation payments. The term "any person" is sufficiently broad, without the specifying language of the 1986 amendments, to include one whose actions contributed to the inadequacy of the self-insured's security deposit, thereby necessitating the Fund's assumption and continued payment of workers' compensation liabilities. By initially not specifying the entities whom the Fund could pursue, the Legislature in effect conferred standing on the Fund in all instances in which a legal theory for recovery could be stated against the defendant.

■ In this case the Fund's theory is that of equitable subrogation. ■ The doctrine of equitable subrogation "permits a party who has been required to satisfy a loss created by a third party's wrong to step into the shoes of the loser and recover from the wrongdoer." (*Transit Casualty Co. v. Spink Corp.* (1979) 94 Cal.App.3d 124, 132 [156 Cal.Rptr. 360].)

■ Gruber asserts the Fund does not allege a loss suffered by CCG employees which he created. He contends the only "losses" involved are the workers' compensation payments the Fund has had to pay, pointing out that obviously he did not create the liability (i.e., the underlying injuries) for these payments. Not so. The complaint alleged "CCG's injured employees were damaged because the full amount of their workers' compensation payments was not secured." Here the loss was the shortfall to which Gruber is alleged to have contributed. If the Fund were not available to absorb the loss, presumably the injured employees would not receive all the benefits to which they were entitled. Prior to enactment of section 3740 et seq., there was *no* provision for the continued payment of benefits to injured workers from other sources if the security deposit was inadequate.

## IV. *Statutory Violation*

In its sixth cause of action the Fund claimed Gruber breached certain statutory duties "by verifying as accurate CCG's 1981 Annual and 1982 Interim Reports based on ESIS' gross underestimation of CCG's future workers' compensation liabilities without any reasonable investigation, basis, or knowledge to confirm the accuracy of the estimates provided by ESIS contained therein." The complaint further stated that Gruber directly ordered, authorized and participated in this negligent activity by signing and submitting the Reports under penalty of perjury.

■ "[T]he law is . . . well-settled that for a statute . . . to be relevant to a determination of negligence, not only must the injury be a proximate result of the violation, but the plaintiff must be a member of the class of

persons the statute . . . was designed to protect, and the harm must have been one the statute . . . was designed to prevent." (*Stafford* v. *United Farm Workers* (1983) 33 Cal.3d 319, 324 [188 Cal.Rptr. 600, 656 P.2d 564]; see Evid. Code, § 669 [negligence presumed].) Whether the alleged injury resulted from an occurrence of which the statute was designed to protect and whether plaintiff belongs to the class of persons for whose protection the statute was adopted are questions of law. (*Michael R.* v. *Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1066 [205 Cal.Rptr. 312].)

### A. *Section 3700.5*

■ The Fund first maintains that section 3700.5 conferred a specific statutory duty upon Gruber. At the relevant times section 3700.5 provided as follows: "The failure to secure the payment of compensation as required by this article [article 1] by one who knew, or because of his business knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment of compensation, is a misdemeanor." (Former § 3700.5, added by Stats. 1981, ch. 894, § 1, amended by Stats. 1986, ch. 1128, § 3,[6] eff. Sept. 25, 1986.)

The Fund contends that under section 3700.5, the duty to secure payment of compensation extends beyond the employer to all knowledgeable participants in the system, including, in this case, Gruber. We do not agree with the Fund's expansive interpretation of the statute.

It is useful here to review the pertinent statutory framework. ■ The underpinnings of our workers' compensation system rest on the *employer's* obligation in the first instance to secure payment of compensation. Specifically, section 3700 establishes the duty of the private *employer* to provide compensation security by either (1) carrying insurance with an authorized company (subd. (a)) or (2) securing from the director a certificate of consent to self-insure which may be furnished upon satisfactory proof of ability to self-insure and pay compensation that may become due (subd. (b)). Section 3701 details the means by which a private self-insurer, such as CCG, provides compensation security. This statutory obligation commences with the inception of *employer* status (*People* v. *Barker* (1938) 29 Cal.App.2d Supp. 766, 769-770 [77 P.2d 321]); the duty must be discharged before the necessity for payment of any award arises (*Coffin* v. *Bloodworth* (1938) 28 Cal.App.2d 522, 524 [82 P.2d 953]).

---

[6] The 1986 amendment neutralized the gender reference and deleted the word "business" from the phrase "business knowledge or experience" to read as follows: "The failure to secure the payment of compensation as required by this article by one who knew, or because of his or her knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment of compensation, is a misdemeanor."

An employer who does not purchase insurance or qualify as a self-insurer is illegally uninsured, and numerous penalties and consequences may flow from this illegality. Misdemeanor prosecution has been available since 1937: "Failure to secure the payment of compensation is a misdemeanor." (Former § 3710, added by Stats. 1937, ch. 90, § 3710; provision deleted by amendment in 1951 (Stats. 1951, ch. 1436, § 1); identical provision simultaneously enacted as § 3710.2 (Stats. 1951, ch. 1436, § 3) which also prescribed mandatory penalties and fines for failure to comply after receiving notice demanding compliance.

Also in place since 1937 is the provision providing for a 10 percent increase in compensation recoverable in the case of *"willful* failure *by an employer* to secure the payment of compensation." (§ 4554, enacted 1937, amended 1959, italics added.) Failure to secure payment is prima facie evidence of wilfullness. (§ 4554.)

The civil consequences to the employer for failure to secure payment of compensation are set forth in section 3706: "If any *employer* fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law *against such employer* for damages, as if this division did not apply." (Italics added.) The employer's property is subject to attachment in such action. (§ 3707.)

In addition to the civil action allowed under section 3706, section 3715 permits an employee whose employer has failed to secure payment of compensation to file an application with the appeals board for compensation. An award to the employee by the board is a liquidated claim for damages against the employer, and the director may bring an action against the employer for collection of the award. (§ 3713, subd. (a).) If the employer is a corporation, any parent or substantial shareholder of the corporation or its parent shall be jointly and severally liable. (§ 3717, subd. (a).)

In any claim where it is alleged that the employer has failed to secure payment of compensation, the director shall determine whether the employer was prima facie illegally uninsured. (§ 3715, subd. (c).) Upon making such a determination, the director can file a certificate of lien in the county recorder's office where the employer's property possibly is located; such a certificate is a valid lien in favor of the director. (§ 3720, subd. (a).) Where the employer is a corporation, certificates may be filed against a parent or substantial shareholder of the corporation or its parent, given adequate findings of such relationship. (§ 3717, subd. (b).)

In 1976 the Legislature overhauled the criminal sanction provisions of the code and provided the DIR with authority to issue stop orders against

use of employee labor without securing the liability for compensation. (Former § 3710.1.) Labor Code section 3710.2 was amended to delete the provision making failure to secure payment of compensation a misdemeanor, instead, making violation of a stop order issued by the director a misdemeanor.[7]

Then in 1981 section 3700.5 was introduced into the statutory scheme, this time attaching criminal liability for failure to provide compensation security only where the employer knew or should be reasonably expected to have known of the obligation. Section 3700.5 for the first time announces a negligence standard and logically can be construed as protecting the unsophisticated employer, be it an individual, a corporation, partnership, or other entity[8] who either unwittingly has attained the status of employer or otherwise lacks sufficient knowledge or experience to be charged with awareness of the duty. Employers successfully prosecuted under section 3700.5 are subject to (a) imprisonment in county jail not to exceed six months; (b) imposition of a fine not to exceed $1,000; or (c) both. Obviously, where the employer is a corporation, the fine would be the appropriate punishment. (§ 23.)

■ To the extent any ambiguity is created by use of the word "one" as opposed to "employer" in section 3700.5, we are mindful that the aim of statutory interpretation is to match the construction with the legislative intent. To this end statutory language must be given a construction which will promote rather than defeat the general purpose and policy of the law. (*Harry Carian Sales* v. *Agricultural Labor Relations Bd.* (1985) 39 Cal.3d 209, 223 [216 Cal.Rptr. 688, 703 P.2d 27].) This mandate requires us in turn to take into account certain matters such as " ' "context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." ' " (*Ibid.*) Thus, a statute's apparent purpose will not be sacrificed to a literal construction. (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260].)

■ With these rules in mind, we conclude that the statutory scheme outlined above makes it clear that the duty to secure payment of compensation, as well as the legal consequences for failure to perform the duty,

---

[7] Section 3710.2 was amended in 1980 to expand the scope of criminal liability for failure to observe stop orders to include an "officer, or anyone having direction, management or control of any place of employment or of employees . . . ." (Stats 1980, ch. 852, § 5.)

[8] Section 12, enacted in 1937, states that the masculine gender includes the feminine and neuter. Thus, use of the referent "his" in the 1981 version of section 3700.5 included references to entities as well as individuals. Explicit reference to and inclusion of the feminine gender was accomplished in 1986.

uniformly are placed on the employer only or, in certain instances, on those controlling the employer by virtue of their shareholder or parent status. (§§ 3717, 3720.) Section 3700.5 by its terms does not create any new duty. Rather, it explicitly imposes criminal sanctions for failure to secure payment of compensation, an obligation delineated *elsewhere* in article 1 as reposing only with the employer. The behavior proscribed by section 3700.5, namely, failure to secure payment of compensation "as required by this article," thus is confined to the employer's nonfeasance and cannot be expanded to impose liability on one who does not already possess a duty under the statutory scheme set forth in article 1.

Where the Legislature has desired criminal punishment or exposure to civil liability to encompass entities in addition to the employer, it has done so specifically (i.e., §§ 3710.2, 3717, 3720). ■ This brings us to a related canon of statutory construction, the principle that where a criminal statute is susceptible to more than one interpretation, the ambiguity should be resolved in favor of the criminal defendant. (*In re Atiles* (1983) 33 Cal.3d 805, 812 [191 Cal.Rptr. 452, 662 P.2d 910].) Given any ambiguity in section 3700.5 existing by virtue of the subject "one," such ambiguity should be resolved in favor of limiting the subject to employers, where the statutory duty clearly lies with the employer. ■ Appellant's proposed construction of section 3700.5 provides no warning to corporate officers of the possibility of criminal prosecution, let alone civil liability, for their *employer's* omission.

Notwithstanding our interpretation of section 3700.5, we also note that the statute was not designed to prevent the harm which appellant seeks to remedy. (Evid. Code, § 669.) The wrong alleged here is the underestimation of liabilities, not the outright failure to secure payment of compensation, which section 3700.5 makes a misdemeanor. For a private employer, section 3700, subdivisions (a) and (b), sets forth the two methods of accomplishing this mandate as discussed above. (§ 3701.)

The purpose of section 3700.5, thus, is to achieve compliance with the mandate to secure payment of compensation in the first instance, not to punish employers and their managers for inaccurately estimating liabilities or otherwise submitting incomplete annual reports. Again, where the Legislature has desired to address these problems, it has done so explicitly. The self-insurer's duty to submit the prescribed annual reports is established in section 3702.2. Outright failure to submit the reports subjects the employer to penalties. (§ 3702.3.) Failure to submit complete or timely *reports* may result in additional penalties as well as an order directing compliance or restitution for any losses. (§ 3702.9, subd. (a)(1).) Finally, when the self-insured employer retains a third-party administrator such as ESIS, the

administrator has a statutory duty to make the estimate of accrued liabilities for the annual report "both in good faith and with the exercise of a reasonable degree of care." (§ 3702.1, subd. (d) [added by amendment in 1986].) This provision also acknowledges the employer's underlying responsibility: "The use of a third-party administrator shall not, however, discharge or alter the employer's responsibilities with respect to the report." (*Ibid.*)

Prosecution under section 3700.5 would therefore only occur when an employer was illegally uninsured. Section 3700 establishes the threshold duty of securing payment of compensation. Once this obligation is satisfied, the reporting duties, including estimation of liabilities, are covered elsewhere. (§§ 3702.1, 3702.2, 3702.3, 3702.9.) There is no allegation that CCG failed to obtain the necessary certificate of consent to self-insure (§ 3700, subd. (b)) or failed to post the annual deposit (§ 3701). The deposit was based on estimated liabilities, as required. However, as it allegedly turned out, the liabilities were underestimated.

## B. *Regulations*

 The Fund also insists that the regulations promulgated by the DIR establish the necessary statutory duty. In particular, the Fund argues that Gruber was personally responsible for the accuracy of the Reports because (1) he signed them as vice president of CCG, as required by regulation (report must be signed by officer or authorized employee of self-insurer [tit. 8, § 15251]); (2) in signing off on the Reports he declared under penalty of perjury that he examined the Reports and they were true, correct and complete to the best of his knowledge and belief (self-insurer's annual report form, tit. 8, § 15252); and (3) the estimation of liabilities contained in the Reports must be based on computations that will develop the total future cost of benefits due or potentially due (tit. 8, § 15300).

Again, the code and regulations define a duty of the *self-insured* to file annual reports on forms prescribed by the director. (§ 3702.2; tit. 8, § 15251.) In our view title 8, section 15252, publishes a reporting form and does not purport to establish duties. However, if the provision can be construed as imposing a duty on the officer attesting to the report to verify the accuracy of its content, such duty would flow to the DIR, to whom the declaration under penalty of perjury is made, not to the officer's coemployees. The purpose of a declaration under penalty of perjury is to assure good faith in the statements of the party: an indictment for perjury might follow if the declaration is false. (See *Sheeley* v. *City of Santa Clara* (1963) 215 Cal.App.2d 83, 85 [30 Cal.Rptr. 121].) Here the form is required by, and submitted to, the DIR for the director's use in setting the

amount of the security deposit. The perjury provision was adopted for the protection of the DIR, not the self-insurer's employees.

Finally, title 8, section 15300, describes the method the *self-insured* must follow in estimating its liabilities. Moreover, the complaint itself admits that ESIS, not Gruber, was responsible for estimating the liabilities and completing the Reports. The Fund has failed to state a cause of action against Gruber for breach of statutory duty.

## V. *Negligent Misrepresentation*

The complaint also asserted the tort of negligent misrepresentation against Gruber personally. Specifically, the Fund claimed Gruber (1) falsely estimated CCG's workers' compensation liabilities with no reasonable basis for believing such estimates; (2) knew that CCG, its employees and the department would rely on the estimates in determining the amount of the bond; (3) actively ordered, participated in and authorized the tort; and (4) "knew or reasonably should have known that if CCG became insolvent CCG's employees would be injured by the submission of annual report[s] which underestimated CCG's liabilities and failed to take or order appropriate action to avoid the harm. An ordinarily prudent person, knowing what Gruber knew at the time, would not have acted similarly."

The trial court sustained Gruber's demurrer to the Fund's alleged cause of action for negligent misrepresentation on the basis of the holding in *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586 [83 Cal.Rptr. 418, 463 P.2d 770]. *United States Liab.* involved the negligence of the president of a general agent for an insurance company in computing the premium rate for an insured. The Supreme Court ruled that officers of a corporation "are not responsible to third persons for negligence amounting . . . to a breach of duty owing to the corporation alone; the act must also constitute a breach of duty owed to the third person. . . . More must be shown than breach of the officer's duty *to his corporation* to impose personal liability *to a third person* upon him." (At p. 595, original italics.)

■ The Fund argues Gruber is not shielded from liability to third parties because of his corporate officer status, asserting that Gruber personally had a societal and statutory[9] duty towards CCG employees to refrain from underestimating their workers' compensation liabilities. The Fund also submits that the complaint followed to the letter the Supreme Court's directive in *Francis T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447] with respect to the

---

[9] As we concluded in part III *ante*, Gruber had no statutory duty to CCG employees.

plaintiff's burden in stating a tort cause of action against officers and directors in their individual capacities: "To maintain a tort claim against a director in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct [citation]; or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm [citations]. The plaintiff must also allege and prove that an ordinarily prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." (At pp. 508-509.)

We agree that the complaint recited the magic words of *Francis T.* However, that does not solve the legal problem of whether Gruber owed a duty of care to CCG employees under the circumstances. We conclude he did not.

The opinion in *Francis T.* responded to an especially troubling factual situation in which the plaintiff condominium owner, whose unit previously had been burglarized, installed her own exterior lights after the owners' association failed to act on repeated requests for lighting. It was well known by the association directors that the project was subject to an "exceptional crimewave" at the time. The directors ordered the lighting removed because it violated the project's covenants, conditions and restrictions. Plaintiff complied with the order and was raped and robbed the very night she disconnected the lighting.

In discussing the nature of the duty the directors' owed to plaintiff, the court in *Francis T.* discussed the two traditional limits on a corporate officer's personal liability for negligence as set forth in *United States Liab., supra,* namely, (1) "the oft-stated disinclination to hold an agent personally liable for economic losses when, in the ordinary course of his duties to his own corporation, the agent incidentally harms the pecuniary interests of a third party" (*Francis T.* v. *Village Green Owners Assn., supra,* 42 Cal.3d at p. 505); and (2) "the traditional rule that directors are not personally liable to third persons for negligence amounting merely to a breach of duty the officer owes to the corporation alone." (*Ibid.*)

The present case fits squarely within both of these limits and is distinguished easily from *Francis T.,* which involved alleged tortious conduct resulting in serious physical injury to the plaintiff. The directors' conduct specifically was directed toward the plaintiff in response to her actions and requests. On the other hand, Gruber's conduct, allegedly resulting in *pecuniary* harm to CCG employees, was not directed in any fashion toward, or

in response to, the employees. By signing and submitting the Reports to the department, Gruber was acting solely in the scope and course of his employment for and on behalf of CCG in connection with its statutory reporting obligations. It was by virtue of his status as an officer of CCG, and for no other reason, that Gruber signed and attested to the Reports. The regulations *require* that an officer or other authorized employee of the self-insurer sign the annual report form. (Tit. 8, §§ 15251, 15252.) No cause of action for negligent misrepresentation lies against Gruber in his individual capacity.

The judgment is affirmed.

Channell, J., concurred.

**POCHÉ, J.,** Concurring in result.—Unlike the majority, I cannot agree that Labor Code section 3700.5[1] does not create a statutory duty in those individuals who, on behalf of a corporate employer, fail "to secure payment" of workers' compensation. As I read the statutory scheme, the Legislature has imposed such a duty on corporate officers or authorized employees, such as respondent, Mr. Gruber.

*Section 3700.5 Applicability to Officers and Authorized Employees*

Section 3700.5 provides that "[t]he failure to secure the payment of compensation as required by this article by one who knew, or because of his *or her* knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment of compensation, is a misdemeanor." (Italics in original.) Respondent urges us to read "one" as a generic reference to employers, self-insurers, and sureties. A close look at the legislative scheme and at the amendment of this section persuades me otherwise.

As an initial matter, when the Legislature has imposed criminal liability upon an employer and not those individuals acting on an employer's behalf it has demonstrated the ability to articulate its desires. Thus, section 3751 makes it a misdemeanor for an "employer" to require his employees to pay their own workers' compensation withholding.

In similar fashion when the statutes are directed to the conduct of corporations as well as to natural persons the Legislature has made that clear by speaking in terms of "persons." Thus, section 3744 provides that "[t]he fund shall have the right to bring an action against *any person* to recover

---

[1] All statutory references are to the Labor Code.

compensation paid and liability assumed by the fund, including, but not limited to, any excess insurance carrier of the self-insured employer, and *any person* whose negligence or breach of any obligation contributed to any underestimation of the self-insured employer's total accrued liability as reported to the director." (§ 3744, subd. (c), italics added.) Similarly section 3717 permits the fund to seek indemnity for the liability of an uninsured corporation both from the corporation itself and from "[*a*]*ll persons* who are a parent" and from "[*a*]*ll persons* who are substantial shareholders." (§ 3717, subds. (a)(1) and (a)(2), emphasis added.)

Not only this careful use of statutory language, but the history of section 3700.5 reinforces my view that the "one" in section 3700.5 has always been meant to apply to human actors. When the section was first enacted, it imposed the duty to secure compensation upon "one who knew, or because of his business knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment . . . ." (Stats. 1981, ch. 894, § 1, p. 3408.) In 1986 "business knowledge or experience" was deleted and replaced with "or her." (Stats. 1986, ch. 1128, § 3, p. 4052.) That is a very odd way of saying "employer."

To adopt the view that the section's use of "one" refers only to employers is to reach the absurd result that the owner of business A, a sole proprietorship, can be personally guilty of a misdemeanor if he fails to secure workers' compensation payments for his employees. Meanwhile, his competitor B who has incorporated and behaves identically risks no personal criminal liability for the same conduct. Corporation B is guilty of a misdemeanor, but B, the officer who acted on its behalf, has committed no crime. This is not the result created by the legislative scheme as I read it.

*Conduct Covered by Section 3700.5*

The next question which section 3700.5 raises is whether or not filing a report which underestimates potential liability constitutes a "failure to secure the payment." Section 3700 mandates that every employer "shall secure the payment of compensation" by insuring or by obtaining a certificate of consent to self-insure. There is apparently no dispute that the corporation, California Canners and Growers (CCG), obtained a certificate of consent to self-insure (§ 3700, subd. (b)) or that it failed to post the annual security deposit (§ 3701). What is alleged is that because Mr. Gruber acting on behalf of the corporation underestimated its potential workers' compensation liability, the amount of CCG's self-insurer deposit was insufficient to cover actual claims.

If "failure to secure the payment of compensation" is read as the majority does to mean only a failure to post the required security or a failure to obtain a consent to self-insure, then only the most flagrant misconduct will be punishable. Other sections provide sanctions for such conduct: failing to maintain a security deposit provides grounds to revoke the certificate of consent to self-insure (§ 3702) and failing to submit reports may result in penalty assessments (§ 3702.3). Given the existence of these sanctions, section 3700.5 under the majority's view is merely redundant. As the majority points out, in the case of corporate misbehavior, it would permit nothing more than the levy of a $1,000 fine. (Maj. opn. *ante* at pp. 1157-1158.) I read section 3700.5 as having more teeth than that and for good reason.

The self-insurance scheme is founded upon a system of self-reporting of liability. After reporting estimates of future liability, self-insuring employers must deposit a minimum of 125 percent of their estimated future liability or at least $220,000. (§ 3701, subd. (b).) Although the Director of Industrial Relations audits self-insurers, these audits need only occur in a three-year cycle. (§ 3702.6.) A self-insurer who deliberately seeks to avoid the expense of adequate coverage, but who wants to preserve the appearance of compliance, can merely underestimate its potential liability. Underreporting raises no red flags announcing its noncompliance and conceals the true scope of liability, unless or until the true dimension of the underreporting is uncovered by an audit. Such misconduct creates the gravest risk to the system— potential insolvency. It is only sensible to read "failure to secure the payment of compensation" broadly, as language encompassing the duty to accurately report potential claims liability. Otherwise the least easily detected, but most injurious misconduct, will subject a corporation to no criminal sanction more severe than a $1,000 fine. Not a bite worthy of worry by those contemplating cheating.

Accordingly, I conclude that section 3700.5 makes it a misdemeanor for an officer or authorized employee of a corporation to underreport potential workers' compensation liability.

### *Civil Liability*

When a statute is intended to protect a certain class of persons of which the victims are members from a risk of harm, violation of the statute is a per se breach of duty, in the absence of excuse or justification for the violation. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164-165 [95 Cal.Rptr. 623, 486 P.2d 151]; *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 763 [91 Cal.Rptr. 745, 478 P.2d 465]; *City of Los Angeles* v. *Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009, 1021 [244 Cal.Rptr. 507].)

As I have noted section 3700.5 imposes a statutory duty upon officers and authorized employees of corporations to accurately report potential workers' compensation liability. Failing to make such reports may be the proximate cause of injury to workers who cannot be compensated by a self-insured employer who has set aside inadequate security. Such injury is the sort of injury which section 3700.5 is designed to prevent. The principle underlying the state workers' compensation system is to compensate employees for job-related injuries. (Cal. Const., art. XIV, § 4; *Union Iron Works, et al.* v. *Industrial Accident Commission, etc., et al.* (1922) 190 Cal. 33, 39 [210 P. 410].) Statutes and regulations designed to require adequate security are necessary to ensure the financial soundness of the Self-Insurers' Security Fund (Fund) so that its monies will be available to injured workers. Injured employees are the class of persons to whom the duty to secure compensation is owed.

Because the duty created by section 3700.5 is a duty owed to the former employees of CCG, the Fund as subrogee of those employees may pursue the claim. (See § 3744, subd. (c).)

*Prospectivity*

Despite the foregoing analysis of the legislative scheme, or more accurately because of its very intricacy, I do not believe it appropriate to allow civil liability to be imposed upon Mr. Gruber. The statute is insufficiently clear about what conduct it proscribes to have put him on notice that he was committing a misdemeanor and risking civil liability by underreporting claims liability. "It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit . . . ." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) It would offend due process to expose Mr. Gruber to criminal liability for conduct which I conclude, only after conducting an extensive judicial exegesis, violates section 3700.5. (*Keeler* v. *Superior Court, supra,* at p. 634.) If Mr. Gruber should not be held to answer for a criminal violation of the section, then in all fairness he should not be exposed to civil liability either.

I would have no such difficulties, however, in prospectively applying section 3700.5 to the conduct of corporate officers and authorized employers. Thus I would hold that such officers and employees are henceforth on notice that underreporting of a self-insurer's claim liability in violation of

section 3700.5 may subject them personally to criminal sanctions and civil liability for negligence.

I concur in the result reached by the majority that the demurrer was properly sustained as to the Fund's cause of action for negligence based upon breach of a statutory duty by Mr. Gruber.