Opinion
 

 STONE (S. J.), P. J.
 

 Donald Park, doing business as Century Auto Body & Painting, appeals from a special judgment (Lab. Code, § 3726)
 
 [1]
 
 assessing a penalty of $2,000 against him for failure to obtain workers’ compensation insurance in violation of section 3700. He challenges the constitutionality of the statutory scheme and in particular section 3726 which, he contends, violates the separation of powers doctrine, due process, and principle of check. He claims that the Legislature encroached upon the judicial branch of
 
 *1272
 
 government by permitting a “lay person”—the Labor Commissioner—to order any clerk of any superior court to enter a court judgment. He further claims that the Director of Industrial Relations’ powers to order continued payment to nonworking employees as well as to order penalty assessments without adequate prior judicial review are self-enforceable judgments which violate the judicial powers clause, thus violating the “principle of check.” We conclude that entry of judgment against him does not offend any constitutional principles and affirm the judgment.
 

 Facts
 

 The record reveals that the Labor Commissioner, who is the authorized delegee of the Director of Industrial Relations, Administrator of the Uninsured Employers Fund of the State of California, requested that the Clerk of the Ventura County Superior Court enter special judgment against appellant. Attached to the request was a document from the Department of Industrial Relations Division of Labor Standards Enforcement entitled “Stop Order - Penalty Assessment.” The document stated that an investigation of appellant’s premises by a representative of the Division of Labor Standards Enforcement revealed that appellant had employees whom he had failed to cover with workers’ compensation insurance. Appellant was ordered to stop using any employee labor until he secured the requisite insurance, and was notified that failure to observe this stop order is punishable as a misdemeanor, and that any employee affected by this work stoppage shall be paid for such time lost, not exceeding 10 days, until appellant secured the payment of workers’ compensation.
 

 Additionally, the document reflected a penalty assessment of $2,000 as a penalty for noninsurance. The document notified appellant that unless appealed, the penalty had to be received by the office of the State Labor Commissioner no later than February 24, 1993, and that appellant could appeal by requesting a hearing on the stop order and/or penalty assessment as shown on the reverse of the document. The clerk entered judgment June 28, 1993, pursuant to section 3726, subdivision (a).
 
 [2]
 

 Discussion
 

 1.
 
 Separation of Powers and Principle of Check
 

 Appellant challenges the authority of respondent to have a clerk enter judgment immediately upon the filing of respondent’s request without
 
 *1273
 
 any claimed injury being made by any employee or prejudgment adjudication of the claim by the courts. He contends that the Legislature has no judicial power, nor may it delegate judicial power to any division of state government, other than the judiciary.
 
 (Strumsky
 
 v.
 
 San Diego County Employees Retirement Assn.
 
 (1974) 11 Cal.3d 28, 35 [112 Cal.Rptr. 805, 520 P.2d 29] .)
 
 [3]
 

 We review the statutory scheme. Every employer except the state must secure the payment of workers’ compensation either by obtaining insurance against liability from a duly authorized insurer or by securing from the Director of Industrial Relations a certificate of consent to self-insure. (§ 3700, subds. (a), (b).) Failure to secure payment of workers’ compensation as provided in section 3700 is a misdemeanor. (§ 3700.5.) Any injured employee or his or her dependents may bring an action at law against an employer who fails to secure the payment of workers’ compensation and it will be presumed that the employee’s injury was a direct result of the employer’s negligence. (§§ 3706, 3708.) The Director of Industrial Relations may adopt, amend, and repeal such rules and regulations reasonably necessary to enforce and administer workers’ compensation laws. (§ 3710.)
 

 When an employer fails to secure workers’ compensation required by section 3700, the director “shall issue and serve on such employer a stop order prohibiting the use of employee labor by sr ch employer until the employer’s compliance with the provisions of Section 3700. Such stop order shall become effective immediately upon service.” (§ 3710.1.) The employer must pay any employee so affected by such work stoppage for such time lost, not exceeding 10 days, pending compliance by the employer.
 
 {Ibid.)
 
 The employer may protest the stop order by filing with the director a written request for a hearing within 20 days after service of the stop order, and may take a writ of mandate within 45 days from the director’s findings after hearing to the appropriate superior court.
 
 {Ibid.)
 
 Failure to observe a stop order is a misdemeanor. (§ 3710.2.)
 

 When the stop order is issued, the director “shall also issue and serve a penalty assessment order requiring the uninsured employer to pay to the director, for deposit in the State Treasury to the credit of the Uninsured Employers Fund, the sum of one thousand dollars ($1,000) per employee employed at the time the order is issued and served, as an additional penalty for being uninsured at that time.” (§ 3722, subd. (a).) An employer may
 
 *1274
 
 contest the penalty assessment order by filing a written request for a hearing within 15 days after service of the order. (§ 3725.)
 

 Any amount of penalty found by the director as a result of the hearing shall become due and payable 45 days after notice of the findings and written findings have been mailed. (§ 3725.) The employer aggrieved by the decision may take a writ of mandate from these findings upon the execution of a bond to the state in double the amount found due “as long as the party agrees to pay any judgment and costs rendered against the party for the assessment.”
 
 (Ibid.)
 
 The director may withdraw a stop order or a penalty assessment order where investigation reveals that the employer was in compliance with section 3700 on the date and at the time of service of such order or on the date and at the time of an injury or claimed injury, or where an insured employer responded in writing to a request to furnish the status of the workers’ compensation coverage within the time prescribed. (§ 3727.1.)
 

 Although appellant takes issue with section 3722, subdivision (b)(1), and asserts that there must first have been an “adjudication of the claim,” that section is inapplicable here. Section 3722, subdivision (b)(1) concerns the imposition of penalties following the adjudication of a claim. The section pertinent here is section 3722, subdivision (a), which is triggered by the employer’s failure to be covered by workers’ compensation insurance and is not dependent on a claim for industrial injury having been made.
 

 In construing a statute, a court should ascertain the legislative intent in order to carry out the purpose of the law.
 
 (DuBois
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) The underpinnings of the workers’ compensation system rest upon the employer’s obligation to secure payment of workers’ compensation.
 
 (Self-Insurers’ Security Fund
 
 v.
 
 ESIS, Inc.
 
 (1988) 204 Cal.App.3d 1148,1156 [251 Cal.Rptr. 693].) This statutory obligation begins with the inception of the status as employer and does not depend upon the making of a claim.
 
 (Ibid.)
 

 The separation of powers doctrine is based upon the separation of powers clause (art. Ill, § 3) and the judicial powers clause (art. VI, § 1) of the California Constitution.
 
 [4]
 
 The California Supreme Court has stated that “[d]espite the breadth of [art. VI, § 1], various administrative agencies in this state are authorized by the Constitution to exercise judicial powers. Some of these agencies are created by the Constitution, and are thereby vested with
 
 *1275
 
 certain judicial powers (e.g., arts. XX, § 22 [Department of Alcoholic Beverage Control]; XII [Public Utilities Commission]); others have been legislatively endowed with judicial powers pursuant to a specific constitutional authorization (see art. XIV, § 4 [Workers’ Compensation Appeals Board];
 
 id.,
 
 § 1 [‘The Legislature may provide ... for the general welfare of employees and for [that purpose] may confer on a commission legislative, executive, and judicial powers.’]).”
 
 (McHugh
 
 v.
 
 Santa Monica Rent Control Bd.
 
 (1989) 49 Cal.3d 348, 355-356 [261 Cal.Rptr. 318,
 
 777
 
 P.2d 91], fn. omitted.)
 

 The California Supreme Court, in commenting on the separation of powers provided in the California Constitution, stated that the two provisions preclude exercise of judicial power by “nonconstitutional” administrative agencies, i.e., those whose authority is derived solely from a grant of power by the state or local government entity, but do not limit the power of agencies whose authority is derived from the Constitution itself.
 
 (Lentz
 
 v.
 
 McMahon
 
 (1989) 49 Cal.3d 393, 404 [261 Cal.Rptr. 310,
 
 777
 
 P.2d 83].) Regarding the statutory scheme at issue, the Legislature has required all employers to secure the payment of workers’ compensation to injured workers pursuant to the “plenary power” the Constitution has granted to the Legislature “ ‘to create, and enforce a complete system of workers’ compensation.’ ”
 
 (DuBois
 
 v.
 
 Workers’ Comp. Appeals Bd., supra,
 
 5 Cal.4th 382, 388; Cal. Const., art. XIV, § 4.)
 

 Consequently, neither the separation of powers nor the judicial powers clause, per se, prohibits the exercise of “quasi-judicial” functions by an administrative agency. Rather, the California Supreme Court has held that an administrative agency may constitutionally hold hearings, determine facts, apply the law, and impose certain types of monetary relief so long as (i) these activities are “authorized by statute or legislation and are
 
 reasonably necessary
 
 to effectuate the administrative agency’s
 
 primary, legitimate regulatory purposes,
 
 and (ii)
 
 the ‘essential’ judicial power
 
 (i.e., the power to make enforceable, binding judgments)
 
 remains ultimately in the courts, through review of agency determinations." (McHugh
 
 v.
 
 Santa Monica Rent Control Bd., supra,
 
 49 Cal.3d 348, 372.)
 

 Here the instant statutory scheme does authorize the director to adjudicate penalties imposed on employers who fail to secure workers’ compensation insurance. Nonetheless, the Legislature’s authorizing the challenged power does not shield it from scrutiny under the reasonably necessary/legitimate regulatory purpose prong of McHugh’s test.
 
 (Walnut Creek Manor
 
 v.
 
 Fair Employment & Housing Com.
 
 (1991) 54 Cal.3d 245, 257 [284 Cal.Rptr. 718, 814 P.2d 704].) An important function of penalty assessment
 
 *1276
 
 under the challenged statutory scheme is to help finance the California Uninsured Employers Fund, a source of funds for injured workers whose employers have failed or refused either to obtain workers’ compensation insurance coverage, or to qualify as self-insurers for the employers’ liability.
 
 (DuBois
 
 v.
 
 Workers’ Comp. Appeals Bd.., supra,
 
 5 Cal.4th 382, 388-389.) This purpose dovetails with the several intents of the Workers’ Compensation Act; i.e., “(1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee’s work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees’ injuries.” (S.
 
 G. Borello & Sons, Inc.
 
 v.
 
 Department of Industrial Relations
 
 (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399].)
 

 Consequently, the penalties imposed pursuant to statute are reasonably necessary to the primary concern to create a source of benefits to the employee who otherwise would receive no benefits because of the employer’s failure or refusal to obtain workers’ compensation coverage. The adjudicatory functions of the agency are circumscribed since the director determines whether or not the employer is insured, and, if not, the number of employees in its employ. The penalty is based on that number.
 
 [5]
 
 Additionally, there is a statutory limit of $100,000 on the amount of penalty that can be assessed. (§ 3722.)
 

 Appellant argues that the director’s powers to require the employer to continue to pay each then nonworking employee ordered not to work by the director, as well as assessing a penalty, violate the “principle of check.” In
 
 McHugh
 
 v.
 
 Santa Monica Rent Control Bd., supra,
 
 49 Cal.3d 348, 376-377, the California Supreme Court found that the order of the Rent Control Board, which was given immediate practical effect without giving the landlord opportunity to obtain judicial review, violated the “principle of check.”
 

 
 *1277
 
 A statute is to be construed whenever possible to preserve its constitutionality.
 
 (Walnut Creek Manor
 
 v.
 
 Fair Employment & Housing Com., supra,
 
 54 Cal.3d 245, 271.) Courts will uphold an agency’s authority to exercise a challenged power, however, “only if the administrative scheme also respects the ‘principle of check’ by providing for judicial review of administrative determinations.”
 
 (McHugh
 
 v.
 
 Santa Monica Rent Control Bd., supra,
 
 49 Cal.3d 348, 373.)
 

 Here the enabling statute makes certain practices crimes and provides penalties for their violation. The director does not devise punitive measures, but merely implements those mandated by statute. Moreover, unlike
 
 McHugh
 
 v.
 
 Santa Monica Rent Control Bd., supra,
 
 49 Cal.3d 348, the statutory scheme here provides that if a hearing is requested, the decision of the director upholding a penalty assessment does not become final and enforceable for 45 days, during which the aggrieved employer may seek judicial review by filing a writ of mandate in the superior court. (§ 3725.) This opportunity for judicial review satisfies the “principle of check.”
 

 Appellant additionally asserts that section 3710.2, which makes the failure of the employer to comply with the stop order a crime “irrespective of merit or lack of merit of the stop order” (appellant’s words), is a violation of the “principle of check.” We disagree. Section 3710.2 also makes the failure to obtain a policy of workers’ compensation insurance or a certificate of consent to self-insure as required by section 3700 a misdemeanor in accordance with section 3700.5. An employer who fails or refuses to comply with section 3700 is already in violation of the law as illegally uninsured.
 
 (Self-Insurers’ Security Fund
 
 v.
 
 ESIS, Inc., supra,
 
 204 Cal.App.3d 1148, 1157.) An employer cannot be criminally liable unless he or she knows, or because of knowledge or experience should know, of the obligation to secure workers’ compensation insurance. (§ 3700.5.) If an employer is illegally uninsured, section 3710.2 simply imposes further criminal liability in continuing to use employees who may be exposed to on-the-job injury where the employer has no insurance to cover them. If the employer has complied with section 3700, the employer can show proof of compliance and request the stop order be lifted. Although an employer may have to pay an employee’s salary for up to 10 days under a stop order, compliance with section 3700 is within the control of the employer and not the employee.
 

 The entry of judgment by the clerk upon the director’s request is simply a ministerial function similar to entry of a default judgment (Code Civ. Proc., § 585), a clerk’s entry of judgment following an unappealed arbitration award (Code Civ. Proc., § 1141.23), or a clerk’s entry of judgment on a sister-state judgment (Code Civ. Proc., § 1710.25). There was no violation of the separation of powers doctrine or “principle of check.”
 

 
 *1278
 
 2.
 
 No Denial of Due Process
 

 Appellant asserts that he was denied due process by having judgment entered by the clerk without the opportunity of notice and opportunity to be heard by an impartial tribunal. He argues further that a writ of mandate is a hollow tool where respondent has reached an opinion of violation and amount of penalty without any evidentiary hearing or record for use in court. The procedural requirements necessary to satisfy due process vary according to the competing interests of the government and the citizen.
 
 (Menefee & Son
 
 v.
 
 Department of Food & Agriculture
 
 (1988) 199 Cal.App.3d 774, 781 [245 Cal.Rptr. 166].)
 

 The court must balance the private interest affected by the official action against the risk of an erroneous deprivation of that interest through the procedures used, along with the government’s interest, including administrative burdens which would be incurred by additional safeguards.
 
 (Peretto
 
 v.
 
 Department of Motor Vehicles
 
 (1991) 235 Cal.App.3d 449, 460 [1 Cal.Rptr.2d 392];
 
 Mackey
 
 v.
 
 Montrym
 
 (1979) 443 U.S. 1, 10 [61 L.Ed.2d 321, 329, 99 S.Ct. 2612].) In
 
 Montrym,
 
 the United States Supreme Court upheld a statute that provided for an immediate hearing upon request after surrender of the license without a presuspension hearing. (443 U.S. 1,10 [61 L.Ed.2d 321, 329].)
 

 The assessment order here was served by mail and contained the warning that failure to appeal would result in enforcement of the penalty assessment as a judgment. It also advised appellant of his appeal rights. The fundamental requisite of due process is an opportunity to be heard. That right has little reality or worth unless one is informed that the matter is pending so that one can choose whether or not to contest it.
 
 (Traverso
 
 v.
 
 People
 
 ex rel.
 
 Dept. of Transportation
 
 (1993) 6 Cal.4th 1152, 1164 [26 Cal.Rptr.2d 217, 864 P.2d 488].) Appellant cannot successfully contend he lacked notice.
 

 The statutory scheme provides for a hearing before the director upon the timely filing of an appeal. Ten days is not an unreasonable period of time to show proof of compliance with section 3700. (See
 
 Traverso
 
 v.
 
 People
 
 ex rel.
 
 Dept, of Transportation, supra,
 
 6 Cal.4th 1152, 1164.) The administrative record would thus contain whatever evidence was relevant that appellant produced which a court could then review on the filing of a petition for writ of mandate. Due process does not require a hearing at the initial stage or at any particular point of an administrative process so long as the requisite hearing is held before the final order becomes effective.
 
 (Lusardi Construction Co.
 
 v.
 
 Aubry
 
 (1992) 1 Cal.4th 976, 992 [4 Cal.Rptr.2d 837, 824 P.2d
 
 *1279
 
 643].) Appellant had a right to a hearing and was notified of this right. That he chose not to contest the stop order and penalty does not make the administrative scheme unconstitutional any more than a defendant’s election not to answer a complaint and to allow a default judgment to be entered makes the civil action against him unconstitutional.
 

 The judgment is affirmed. Costs to respondent.
 

 Gilbert, J., and Yegan, J„ concurred.
 

 [1]
 

 All statutory references are to the Labor Code unless otherwise indicated.
 

 [2]
 

 That section provides that “[w]hen no petition objecting to a penalty assessment order is filed, a certified copy of the order may be filed by the director in the office of the clerk of the superior court in any county in which the employer has property or in which the employer has or had a place of business. The clerk, immediately upon such filing, shall enter judgment for the state against the employer in the amount shown on the penalty assessment order.
 

 [3]
 

 Respondent acknowledges that appellant may challenge the constitutionality of the statutory scheme without exhaustion of administrative remedies.
 
 (Floystrup
 
 v.
 
 City of Berkeley Rent Stabilization Bd.
 
 (1990) 219 Cal.App.3d 1309, 1316 [268 Cal.Rptr. 898];
 
 California Restaurant Assn.
 
 v.
 
 Henning
 
 (1985) 173 Cal.App.3d 1069, 1073 [219 Cal.Rptr. 630].)
 

 [4]
 

 Article III, section 3, provides that “[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.” Article VI, section 1, provides: “The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts. . . .”
 

 [5]
 

 Compare
 
 Walnut Creek Manor
 
 v.
 
 Fair Employment & Housing Com., supra,
 
 54 Cal.3d 245, 251, which held that Government Code section 12987 authorizing an administrative award of compensatory damages for emotional distress violates the judicial powers clause of the California Constitution.
 
 Walnut Creek
 
 concluded that the primary purpose of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) was “to provide a streamlined and economic procedure for preventing and redressing discrimination in housing as an alternative to the more cumbersome and costly procedure of civil suit.” (54 Cal.3d at p. 264.) The Supreme Court stated that an award of unlimited general compensatory damages “is neither necessary to this purpose nor merely incidental thereto . . . .”
 
 (Ibid.)
 

 Not only did the administrative order give the tenant the immediate right to withhold rent otherwise due, but it additionally provided an affirmative defense to an unlawful detainer action.
 
 (McHugh
 
 v.
 
 Santa Monica Rent Control Bd., supra,
 
 49 Cal.3d 348, 376.) Such an order represented “an unwarranted intrusion into the power of the courts to ‘check’ administrative adjudications.”
 
 (Id.
 
 at p. 377.)