[No. B172238. Second Dist., Div. Five. Jan. 24, 2005.]

STARVING STUDENTS, INC., Plaintiff and Appellant, v.
DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR
STANDARDS ENFORCEMENT, Defendant and Respondent.

1358

1360

---

**COUNSEL**

Allan J. Graf for Plaintiff and Appellant.

Anne P. Stevason for Defendant and Respondent.

---

**OPINION**

**KRIEGLER, J.—** ██ Appellant Starving Students, Inc. (Employer), appeals from a judgment denying its petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. Employer sought an order directing respondent Division of Labor Standards Enforcement (DLSE) to withdraw or reduce a $100,000 penalty assessment for Employer's failure to obtain workers' compensation insurance from an authorized insurer. Employer contends: (1) the DLSE has discretion under Labor Code section 3727.1 to withdraw or reduce the penalty and the DLSE refused to exercise that discretion; (2) a mandatory penalty would be unconstitutional; and (3) the $100,000 penalty assessment is unconstitutional as applied in this case. We hold that when an employer obtains workers' compensation insurance from an insurer who is not authorized to write compensation insurance in California and a penalty is assessed against the employer pursuant to Labor Code section 3722, subdivision (a), for failure to obtain insurance from an authorized insurer, the DLSE does not have discretion under Labor Code section 3727.1 to withdraw the penalty assessment. Moreover, the penalty assessment in this case is not unconstitutional. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

██ Employer is a moving company with approximately 300 employees in California. Labor Code section 3700 requires employers to obtain workers' compensation insurance through an insurance company that is authorized to write compensation insurance in California or through a program of self-insurance approved by the Director of Industrial Relations. Employer hired Human Dynamics Corporation (HDC), an employee leasing company, to

arrange Employer's insurance and administer other employee matters.[1] HDC obtained a workers' compensation insurance policy for Employer through Insurance Company of the Americas (ICA), effective January 1, 2003. Employer paid $75,000 per month for the ICA policy. Although a well-known national insurance industry publication listed ICA as an authorized California insurer, ICA was not authorized to write workers' compensation insurance in California. Insurance company profiles stating whether a company is authorized to write workers' compensation insurance in California are available on the Department of Insurance's Web page.

On March 12, 2003, a deputy labor commissioner visited Employer's office to review Employer's workers' compensation insurance policy. The deputy labor commissioner verified with the Department of Insurance that ICA was not an insurance carrier admitted in California. The deputy labor commissioner issued a "Stop Order—Penalty Assessment" that ordered Employer to cease using employee labor until it had obtained workers' compensation insurance through an authorized carrier. Employer was assessed a penalty of $100,000 for failure to carry workers' compensation insurance from an authorized California insurer.

Employer immediately contacted HDC to arrange workers' compensation insurance through an authorized insurer. HDC told Employer that it had secured alternative coverage through another employee leasing company named Omni Staffing. Omni's workers' compensation policy was issued by an authorized California insurer named Kemper. Employer protested the stop work order and requested a hearing. A hearing was held before a DLSE hearing officer on March 17, 2003. Employer presented evidence of its good faith attempt to secure coverage, as well as a letter from HDC stating that Omni had agreed to bind coverage as of March 12, 2003. However, the DLSE presented evidence that Kemper had not agreed to provide coverage to Employer through their policy with Omni. The hearing officer found that no valid policy was in effect. The hearing officer stated that the stop work order would remain in effect until a valid policy was submitted to the DLSE.

Believing it had insurance coverage provided by Kemper, Employer nevertheless continued its operations. On March 19, 2003, the deputy labor commissioner visited Employer's office and cited Employer for violating the stop work order. That day, Employer obtained a new insurance policy through an authorized California insurer named Zenith Insurance Company effective

---

[1] An employee leasing company leases employees of the employer back to the employer. The employee leasing company handles payroll, insurance, and other employee matters.

March 19, 2003. The monthly premium for the Zenith policy was $175,000. Employer sent the DLSE a copy of the Zenith policy. Apparently, the stop work order was lifted. The hearing officer issued an order on April 7, 2003, affirming the penalty assessment.

Employer filed a petition for writ of mandate seeking the DLSE to set aside the April 7, 2003 order affirming the penalty assessment. Employer contended that the DLSE had discretion to withdraw the penalty assessment under Labor Code section 3727.1, which authorizes the DLSE to withdraw a penalty assessment under certain circumstances. A hearing on the petition was held on October 23, 2003. The trial court concluded that the penalty statute was mandatory. Moreover, the trial court concluded that Labor Code section 3727.1 did not apply and the penalty was not unconstitutional. The trial court denied the petition for writ of mandate and entered judgment on November 6, 2003, in favor of the DLSE in the amount of $100,000 with interest at the rate of 10 percent per annum. Employer filed a timely notice of appeal from the judgment.

## DISCUSSION

*Standard of Review*

■ "Statutory construction is a question of law we decide de novo. [Citation.] Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent. [Citation.] Intent is determined foremost by the plain meaning of the statutory language. If the language is clear and unambiguous, there is no need for judicial construction. When the language is reasonably susceptible of more than one meaning, it is proper to examine a variety of extrinsic aids in an effort to discern the intended meaning. We may consider, for example, the statutory scheme, the apparent purposes underlying the statute and the presence (or absence) of instructive legislative history. [Citation.]" (*City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722 [20 Cal.Rptr.3d 322].) ■ Our review of the ruling on the constitutional question is also de novo. (*City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1313 [92 Cal.Rptr.2d 418].)

*Statutory Scheme*

■ The California Constitution empowers the Legislature to create and enforce a complete system of workers' compensation, including "full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects . . . ; [and] full provision for otherwise securing the payment of compensation . . . ." (Cal. Const., art. XIV, § 4.)

■ The Legislature has enacted a comprehensive statutory scheme for workers' compensation insurance. (Lab. Code, § 3700 et seq.) Labor Code section 3700 requires employers to "secure the payment of compensation" by obtaining workers' compensation insurance from an insurer duly authorized to write compensation insurance in California or through a self-insurance program approved by the Director of Industrial Relations (the director).[2] "The securing of the payment of compensation in a way provided in this division is essential to the functioning of the expressly declared social public policy of this state in the matter of workers' compensation. The conduct or operation of any business or undertaking without full compensation security, in continuing violation of social policy, shall be subject to imposition of business strictures and monetary penalties by the director . . . ." (Lab. Code, § 3712, subd. (a).)

■ "Where an employer has failed to secure the payment of compensation as required by Section 3700, the director shall issue and serve on such employer a stop order prohibiting the use of employee labor by such employer until the employer's compliance with the provisions of Section 3700." (Lab. Code, § 3710.1.) "At the time the stop order is issued and served pursuant to Section 3710.1, the director shall also issue and serve a penalty assessment order requiring the uninsured employer to pay to the director, for deposit in the State Treasury to the credit of the Uninsured Employers Fund, the sum of one thousand dollars ($1,000) per employee employed at the time the order is issued and served, as an additional penalty for being uninsured at that time." (Lab. Code, § 3722, subd. (a).) However, the maximum penalty that may be assessed is $100,000. (*Id.*, subd. (f).)

Different penalty provisions apply if an injured employee files a claim for compensation and the Workers' Compensation Appeals Board finds that an employer had not secured the payment of compensation as required by the workers' compensation law. (Lab. Code, § 3722, subd. (d).) "After the time

---

[2] Labor Code section 3700 provides in pertinent part that "[e]very employer except the state shall secure the payment of compensation in one or more of the following ways: [¶] (a) By being insured against liability to pay compensation by one or more insurers duly authorized to write compensation insurance in this state. [¶] (b) By securing from the Director of Industrial Relations a certificate of consent to self-insure . . . ."

for any appeal has expired and the adjudication of the claim has become final, the uninsured employer shall be assessed and pay as a penalty either of the following: [¶] (1) In noncompensable cases, two thousand dollars ($2,000) per each employee employed at the time of the claimed injury. [¶] (2) In compensable cases, ten thousand dollars ($10,000) per each employee employed on the date of the injury." (*Ibid.*)[3] The maximum penalty that may be assessed is $100,000. (*Id.*, subd. (f).)

"The director may, at any time, require any employer to furnish a written statement showing the name of his or her insurer or the manner in which the employer has complied with the provisions of Section 3700. Failure of the employer for a period of 10 days to furnish the written statement is prima facie evidence that he or she has failed or neglected in respect to the matters so required. . . . An insured employer who fails to respond to an inquiry respecting his or her status as to his or her workers' compensation security shall be assessed and required to pay a penalty of five hundred dollars ($500) to the director for deposit in the State Treasury to the credit of the Uninsured Employers Fund." (Lab. Code, § 3711.)

■ An employer may contest a penalty assessment order by filing a written request for a hearing within 15 days after service of the order. (Lab. Code, § 3725.) Upon receipt of the request, the director must set the matter for a hearing within 30 days. (*Ibid.*) An employer aggrieved by the decision of the director may take a writ of mandate from the findings upon the execution of a bond to the state in double the amount found due, as long as the party agrees to pay any judgment and costs rendered against the party for the assessment. (*Ibid.*)

■ Labor Code section 3727.1 authorizes the director to withdraw erroneous penalty assessments: "The director may withdraw a stop order or a penalty assessment order where investigation reveals the employer had secured the payment of compensation as required by Section 3700 on the date and at the time of service of such order. The director also may withdraw a penalty assessment order where investigation discloses that

---

[3] Labor Code section 3722, subdivision (d) provides in pertinent part: "If upon the filing of a claim for compensation under this division the Workers' Compensation Appeals Board finds that any employer has not secured the payment of compensation as required by this division and finds the claim either noncompensable or compensable, the appeals board shall mail a copy of their findings to the uninsured employer and the director, together with a direction to the uninsured employer to file a verified statement pursuant to subdivision (e). [¶] After the time for any appeal has expired and the adjudication of the claim has become final, the uninsured employer shall be assessed and pay as a penalty either of the following: [¶] (1) In noncompensable cases, two thousand dollars ($2,000) per each employee employed at the time of the claimed injury. [¶] (2) In compensable cases, ten thousand dollars ($10,000) per each employee employed on the date of the injury."

the employer was insured on the date and at the time of an injury or claimed injury, or where an insured employer responded in writing to a request to furnish the status of his workers' compensation coverage within the time prescribed."

In addition to the penalty provisions set forth above, former Labor Code section 3700.5 provided that "[t]he failure to secure the payment of compensation as required by this article by one who knew, or because of his or her knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment of compensation, is a misdemeanor punishable by imprisonment in the county jail for up to one year, or by a fine of up to ten thousand dollars ($10,000), or by both that imprisonment and fine." (Lab. Code, § 3700.5.)[4]

*Withdrawal of Penalty Assessment*

Employer contends that although it did not have insurance through an authorized carrier, it was "insured" at the date and time of any injuries to employees and its employees were not deprived of any benefits. Therefore, Employer contends, the DLSE had discretion under Labor Code section 3727.1 to withdraw or reduce the penalty assessment against Employer. We conclude relief was not available to Employer under Labor Code section 3727.1.

 Labor Code section 3727.1 authorizes the DLSE to (1) withdraw a stop order or penalty assessment order upon finding that the penalized employer had in fact secured the payment of compensation as required by the workers' compensation provisions at the time the order was served; (2) withdraw a penalty assessment where the employer was in fact insured at the time of a claimed injury; and (3) withdraw a penalty assessment where the employer in fact responded to a request to furnish evidence of coverage within the prescribed time.[5]

---

[4] The Legislature has amended the amount of the fine authorized under Labor Code section 3700.5, effective March 1, 2005, to provide for a fine "up to double the amount of premium, as determined by the court, that would otherwise have been due to secure the payment of compensation during the time compensation was not secured, but not less than ten thousand dollars[.]" As amended, the statute also provides for subsequent convictions and the imposition of additional fines.

[5] Labor Code section 3727.1 provides that the director "may" withdraw penalty assessments where investigation reveals no basis existed for the assessment. Although Labor Code section 15 defines "may," when used in the Labor Code, as "permissive," Labor Code section 5 provides that the general provisions of the code do not govern where the context of the particular provision otherwise requires. In context, the word "may" in Labor Code section 3727.1 does not invest the director with discretion to refuse to withdraw a penalty assessment shown to have been issued erroneously. Rather, Labor Code section 3727.1 provides the

The latter two provisions for relief under Labor Code section 3727.1 are inapplicable in this case. Employer was not cited under Labor Code section 3722, subdivision (d) for a failure to secure payment of compensation at the time an employee was injured. This case does not present an issue regarding injured employees. Nor was Employer cited for failing to respond to a request to furnish evidence of coverage under Labor Code section 3711. The basis for the stop order and penalty assessment against Employer was Employer's failure to secure payment of compensation as required by Labor Code section 3710.1. Accordingly, the only possible basis for relief available to Employer is found in the first provision of Labor Code section 3727.1. Employer is only entitled to relief in the instant case if the record supports a finding that the penalized employer had in fact secured payment of compensation as required by the workers' compensation provisions at the time the order was served. (Lab. Code, § 3727.1.)

Employer was not entitled to relief under the first provision of Labor Code section 3727.1. The record is uncontradicted that Employer failed to secure compensation as required by the workers' compensation statutes at the time the stop order was issued. The insurance company utilized by Employer was not "duly authorized to write compensation insurance in [California] . . . ." (Lab. Code, § 3700.) Presented with a record revealing that Employer was in violation of Labor Code section 3700, the DLSE had no statutory authority to relieve Employer of the penalty assessment. The trial court properly denied the petition for writ of mandate under these circumstances.

*Due Process*

Employer contends the penalty provisions of Labor Code section 3722, subdivision (a) are unconstitutional on their face or unconstitutional as applied in this case. We disagree.

■ "[T]he Legislature may constitutionally impose reasonable penalties to secure obedience to statutes enacted under the police power, so long as those enactments are procedurally fair and reasonably related to a proper legislative goal. [Citation.]" (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 352 [165 Cal.Rptr. 787, 612 P.2d 877].) "Imposition of civil penalties has, increasingly in modern times, become a means by which legislatures implement statutory policy." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].) "[C]ivil penalties may have a punitive or

director with the authority to withdraw an erroneous assessment. Otherwise, the aggrieved employer must contest the penalty assessment order as provided under Labor Code section 3725. (Cf. *Garcia v. Industrial Acci. Com.* (1958) 162 Cal.App.2d 761, 764 [328 P.2d 561] [despite statutory language that commission "may" allow attorney's fee lien, commission had no discretion to disallow lien].)

deterrent aspect, [but] their primary purpose is to secure obedience to statutes and regulations imposed to assure important public policy objectives." (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 147–148 [279 Cal.Rptr. 318, 806 P.2d 1353].) It is not uncommon for a civil penalty to require no proof of actual harm. (*City and County of San Francisco v. Sainez, supra,* 77 Cal.App.4th at p. 1315.) "Moreover, '[a] penalty statute pre-supposes that its violation produces damage beyond that which is compensable.' [Citation.]" (*Ibid.*)

The due process clauses of the federal and state Constitutions are the most basic substantive checks on government's power to act unfairly or oppressively. (*Hale v. Morgan, supra,* 22 Cal.3d at p. 398.) "Courts have consistently assumed that 'oppressive' or 'unreasonable' statutory penalties may be invalidated as violative of due process. [Citation.]" (*Id.* at p. 399.) We examine the penalty provision to determine whether, as enacted or as specifically applied, the penalties authorized are reasonable and proper or arbitrary and oppressive. (*Ibid.*)

In considering the constitutionality of a penalty assessment, the courts have examined whether (1) the amount of the statutory penalty is mandatory; (2) the duration of the penalty is potentially unlimited; (3) the prohibited acts encompass a broad range of culpable conduct and widely divergent injuries; (4) the penalty is imposed equally on those with different levels of sophistication and financial strength; and (5) the penalty is potentially more severe than that provided by the Legislature for other more serious transgressions under the statutory scheme. (*Kinney v. Vaccari, supra,* 27 Cal.3d at p. 352; *Hale v. Morgan, supra,* 22 Cal.3d at pp. 399–400.)

A penalty provision that is suspect for these reasons is facially constitutional if under some circumstances, the application of the penalty would be constitutional. (*Hale v. Morgan, supra,* 22 Cal.3d at p. 404.) "[A] statute is presumed to be constitutional and . . . it must be upheld unless its unconstitutionality 'clearly, positively and unmistakably appears.' [Citations.]" (*Ibid.*) Where a penal statute may be subject to both constitutional and unconstitutional applications, courts evaluate the propriety of the sanction on a case-by-case basis. (*Ibid.*) A penalty may be unconstitutionally excessive as applied to the facts of a particular case. (*Ibid.*)

The penalty assessment required under Labor Code section 3722, subdivision (a), is not unconstitutional on its face. Although the amount of the penalty is mandatory, the amount is limited to $100,000 by Labor Code section 3722, subdivision (f). Moreover, the amount of the penalty is inherently tailored to the size of the employer: small employers with presumably fewer resources are assessed a lesser penalty based on the fact that they

employ fewer employees. The maximum penalty is assessed against only large businesses employing 100 employees or more. In addition, the statutory scheme does not require penalties to be assessed against employers equally regardless of culpability. Employers whose conduct is more culpable because they knew or should have known of the obligation to secure compensation may be found guilty of a misdemeanor under Labor Code section 3700.5.

In addition, the penalty is not constitutionally excessive as applied in this case. Employer saved more than $200,000 in premiums by obtaining insurance through an unauthorized carrier for a few months. The $100,000 penalty assessment is less than half the amount that Employer should have been paying in premiums to an authorized carrier. Employer's premium savings placed Employer at a competitive advantage in relation to moving companies who secured compensation in compliance with Labor Code section 3700 at higher rates. We conclude the penalty is constitutional as applied to the facts of this case.

*Hale v. Morgan, supra,* 22 Cal.3d 388, is readily distinguishable. In *Hale,* the California Supreme Court held that a $100 per day penalty against a landlord under Civil Code section 789.3 for intentionally interrupting a tenant's utilities was unconstitutionally excessive as applied to the facts of the case. The "relatively unsophisticated" landlord was a Daly City cable television installer who had recently purchased a small trailer park in South Lake Tahoe that he managed personally. (*Hale v. Morgan, supra,* 22 Cal.3d at p. 405.) The tenant moved a trailer into the park without permission. When confronted, the tenant agreed to pay $65 monthly rent, but then did not. (*Id.* at p. 393.) The landlord terminated utility services to the tenant's trailer in an attempt to evict the tenant. The tenant filed an action for damages and statutory penalties. Although the tenant lived alternatively in the mobilehome and in his sister's residence until he moved from the trailer park, the trial court found that the tenant had been deprived of utility services for 173 days, resulting in a penalty of $17,300.

The *Hale* court found that the penalty provided for under Civil Code section 789.3 was mandatory, potentially limitless regardless of circumstance, capable of serious abuse, and excessively severe in comparison to sanctions imposed for other more serious civil violations in California and for similar prohibited acts in other jurisdictions. (*Hale v. Morgan, supra,* 22 Cal.3d at p. 404.) For these reasons, the court concluded that Civil Code section 789.3 may produce unconstitutionally excessive penalties under certain circumstances. (*Hale v. Morgan,* at p. 404.) However, because the penalty imposed under Civil Code section 789.3 could be constitutional in a given case, the

court found that the penalty provision was not unconstitutional on its face. (*Hale v. Morgan*, at p. 404.) Rather, the court held that Civil Code section 789.3 violated due process as applied to the facts of the case. (*Hale*, at p. 404; *City and County of San Francisco v. Sainez, supra*, 77 Cal.App.4th at p. 1312.)

The factors present in *Hale* that led to a finding that the penalty was unconstitutional as applied are not present in the instant case. Unlike the situation in *Hale*, the penalty here was not assessed upon a small, unsophisticated businessperson, but instead was assessed against a large business with approximately 300 employees in California in need of workers' compensation insurance. Unlike *Hale*, the amount of the penalty assessed against Employer was limited by statute. In *Hale*, the court compared the $17,300 penalty assessment against the landlord to the tenant's $780 annual rent obligation. "While the record does not disclose the purchase price of the park, it is not inconceivable that though [the tenant's] initial entry may have constituted a trespass, and though it was subsequently determined judicially that he breached his rental contract, he may well end up owning the park or a substantial equity therein as a consequence of the application of [the penalty provisions]. Such a confiscatory result is wholly disproportionate to any discernible and legitimate legislative goal, and is so clearly unfair that is cannot be sustained." (*Hale v. Morgan, supra*, 22 Cal.3d at p. 405.) In contrast, even after Employer pays the penalty assessment in this case, Employer will have realized a financial advantage, because the penalty assessment is less than half the amount that Employer should have paid in insurance premiums.

The *Hale* court also noted that because the penalty assessed under Civil Code section 789.3 is paid to the tenant, the penalty scheme provides tenants with a windfall beyond their actual damages and costs. The penalty scheme was subject to potential manipulation by a knowledgeable tenant "to ambush an unknowing landlord converting the single wrongful act of the latter into a veritable financial bonanza." (*Hale v. Morgan, supra*, 22 Cal.3d at p. 403.) The penalty assessed under Labor Code section 3722 for failure to secure workers' compensation insurance from an authorized insurer is paid to the State Treasury to fund the Uninsured Employers Fund. Thus, there is no danger of creating a windfall against public policy. In sum, we find no violation of Employer's due process rights in the amount of the penalty assessment.

## DISPOSITION

The judgment is affirmed. Respondent Division of Labor Standards Enforcement is awarded its costs on appeal.

Turner, P. J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 2005.