Filed 10/26/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| AARON TAYLOR et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT,<br><br>    Defendant and Respondent. | A146148<br><br>(Solano County<br>Super. Ct. No. FCS045423) |

The Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) imposed a $179,329.60 penalty, pursuant to Labor Code section 3722, subdivision (b) (hereafter section 3722(b)),[1] against A. Taylor, LLC[2] for failure to maintain workers' compensation insurance as required by section 3700. Taylor requested

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III.C. and III.D.

[1] Undesignated statutory references are to the Labor Code. Section 3722(b) provides, in relevant part: "At any time that the director determines that an employer has been uninsured for a period in excess of one week during the *calendar year* preceding the determination, the director shall issue and serve a penalty assessment order requiring the uninsured employer to pay to the director, for deposit in the State Treasury to the credit of the Uninsured Employers Fund, the greater of (1) twice the amount the employer would have paid in workers' compensation premiums during the period the employer was uninsured, determined according to subdivision (c), or (2) the sum of one thousand five hundred dollars ($1,500) per employee employed during the period the employer was uninsured." (Italics added.)

[2] A. Taylor, LLC does business as Aaron's Automotive, and its sole member is Aaron Taylor. We refer to appellants collectively as Taylor.

1

an administrative hearing and then filed a petition for writ of administrative mandamus under section 3725. The petition was dismissed after the trial court sustained DLSE's demurrer without leave to amend. On appeal, Taylor renews various statutory construction and constitutional challenges to the penalty and section 3722(b). In the published portion of this opinion, we hold "calendar year," as used in section 3722(b), means the 12-month period immediately preceding a determination that an employer has been uninsured for the requisite period. In the unpublished portion of this opinion, we reject Taylor's constitutional challenges. We conclude the trial court properly determined the petition for writ of mandate failed to state a cause of action and affirm.

## I.  STATUTORY BACKGROUND

The purposes of the workers' compensation scheme are "(1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries." (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354.) To accomplish those goals, "[e]very employer except the state must secure the payment of workers' compensation either by obtaining insurance against liability from a duly authorized insurer or by securing from the Director of Industrial Relations a certificate of consent to self-insure. (§ 3700, subds. (a), (b).) . . . [¶] When an employer fails to secure workers' compensation required by section 3700, the director 'shall issue and serve on such employer a stop order prohibiting the use of employee labor by such employer until the employer's compliance with the provisions of Section 3700. Such stop order shall become effective immediately upon service.' (§ 3710.1.)" (*Bradshaw v. Park* (1994) 29 Cal.App.4th 1267, 1273.) "An employer's failure to carry workers' compensation insurance for its employees can [also] result in criminal punishment, including a fine or imprisonment or both [(§ 3700.5)], administrative penalties [(§§ 3711, 3722)], and a civil suit for damages by an injured employee [(§ 3706)]." (*Valdez v. Himmelfarb* (2006) 144 Cal.App.4th 1261, 1268, fns. omitted.)

2

"An employer may contest a penalty assessment order by filing a written request for a hearing within 15 days after service of the order. ( . . . § 3725.) Upon receipt of the request, the director must set the matter for a hearing within 30 days. (*Ibid*.) An employer aggrieved by the decision of the director may take a writ of mandate from the findings upon the execution of a bond to the state in double the amount found due, as long as the party agrees to pay any judgment and costs rendered against the party for the assessment. (*Ibid*.)" (*Starving Students, Inc. v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1357, 1365 (*Starving Students*).)

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Aaron's Automotive has been in operation since 2007. On January 22, 2015, DLSE inspected and discovered the business had employees but had never acquired workers' compensation insurance coverage. On February 9, 2015, Taylor obtained coverage through the State Compensation Insurance Fund, which was effective as of January 29, 2015. On February 27, 2015, pursuant to section 3722(b), DLSE issued a "Penalty Assessment Order" (citation No. 008907), assessing a penalty against Taylor in the amount of $179,329.60.

Taylor filed a request for an administrative appeal hearing. On April 3, 2015, the hearing was held before a DLSE hearing officer. At the hearing, Taylor argued: (1) the term calendar year, as used in section 3722(b), means January 1 to December 31; (2) section 3722(b) violates the equal protection clause of the Fourteenth Amendment; (3) the penalty violates substantive due process; and (4) the penalty is an excessive fine imposed in violation of the Eighth Amendment.

On April 8, 2015, the hearing officer issued written findings and affirmed the penalty assessment. The hearing officer found: "[Taylor] did not have workers' compensation insurance for the period of February 27, 2012 through January 29, 2015 and had 11 employees during that time period." The hearing officer concluded Taylor's constitutional arguments provided no basis for defense in an administrative hearing and also determined the term calendar year, as used in section 3722(b), means "one year back

3

from the date that the director determines an employer has been uninsured on the date the citation is issued." (Italics omitted.)

Thereafter, Taylor filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), seeking to have the penalty set aside. In support of the petition, Taylor argued DLSE committed errors of law by rejecting its constitutional claims and its interpretation of calendar year. Taylor also filed a motion for an order waiving section 3725's bond requirement.

DLSE demurred to the petition, asserting Taylor failed to state facts sufficient to constitute a cause of action because section 3722(b) is not unconstitutional and was properly construed. In support of its demurrer, DLSE filed a request for judicial notice of section 3722's legislative history. Taylor opposed DLSE's demurrer and filed a request for judicial notice of additional legislative history.

The trial court issued a tentative ruling,[3] which was adopted as the ruling of the court after hearing on the two motions. The trial court sustained DLSE's demurrer without leave to amend, dismissed Taylor's petition for administrative mandamus, and entered judgment in favor of DLSE in the amount of $179,329.60.

The trial court's order states: "The court . . . rejects the arguments by [Taylor] that the term 'calendar year' should be interpreted to mean the January 1 through December 31 time period for the year preceding the citation date, instead of the 365 days prior to issuance of the citation. [¶] . . . [¶] It is . . . consistent with analogous statutes of limitations to define 'calendar year' as used within . . . section 3722(b) as referring to the time period of 365 days up to issuance of the citation in question, [Code of Civil

---

[3] On February 1, 2016, Taylor filed a request for judicial notice of a printout of the "Splash Page" from the DLSE website, the trial court's tentative ruling on DLSE's demurrer, the trial court clerk's notice of filing appeal, and a file-stamped copy of the proof of service of the notice of appeal. We deferred ruling on the unopposed motion and now grant the request for judicial notice of the latter three documents. (Evid. Code, §§ 452, subd. (d), 459.) We deny the request for judicial notice of the printout from the DLSE website, as Taylor has not demonstrated its relevance to the issues on appeal. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

4

Procedure] section 340(a) [1 year statute of limitations for civil penalty actions].
[¶] Furthermore, . . . *under either the DLSE's interpretation, or* [*Taylor's*] *urged interpretation,* [*Aaron's Automotive*] *qualified as an employer which had gone for a time period longer than 1 week without the required workers' compensation insurance.*
[Aaron's Automotive] had in fact been without workers' compensation insurance from its inception, in 2007, to January 29, 2015 . . . . [¶] The court has also considered, and rejects, [Taylor's] arguments that [section] 3722 violated due process, excessive fine, and equal protection provision[s] of the federal and/or state constitutions. Similar due process and excessive fine claims were rejected in *Starving Students*[*, supra,* 125 Cal.App.4th at p. 1361] . . . ." (Italics added.) Declaring the issue moot, the trial court did not address Taylor's motion for an order waiving bond. Taylor filed a timely notice of appeal from the judgment.

### III. DISCUSSION

Taylor contends the trial court erred in sustaining DLSE's demurrer. Specifically, Taylor maintains: (1) section 3725's bond requirement is unconstitutional; (2) the trial court incorrectly construed the meaning of calendar year in section 3722(b); (3) the penalty assessed violates state and federal constitutional provisions barring excessive fines (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17); (4) section 3722(b) on its face or as applied, violates equal protection and is a deprivation of due process of law as guaranteed by the federal and California Constitutions (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 7 & art. IV, § 16, subd. (a)).

"The inquiry for the issuance of a writ of administrative mandamus is whether the agency in question prejudicially abused its discretion . . . . [Citations.] A prejudicial abuse of discretion is established if the agency has not proceeded in a manner required by law . . . ." (*San Franciscans Upholding the Downtown Plan v. City and County of San*

5

*Francisco* (2002) 102 Cal.App.4th 656, 673–674.)  Taylor has not shown a viable claim for mandamus can be stated under any theory.[4]

A.      *Standard of Review*

We review questions of constitutional law and statutory construction de novo. (*Starving Students, supra,* 125 Cal.App.4th at p. 1363; *Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403.)  Similarly, "[o]n appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.]  First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  Next, we treat the demurrer as admitting all material facts properly pleaded.  Then we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citations.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440.)  " 'We also consider matters which may be judicially noticed.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "[The appellant] has the burden to show either that the demurrer was sustained erroneously or that the court abused its discretion in sustaining the demurrer without leave to amend." (*Pinnacle Holdings, Inc. v. Simon* (1995) 31 Cal.App.4th 1430, 1434; accord, *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.)

B.      *Statutory Construction of Section 3722(b)*

The parties frame this case as primarily a dispute regarding the meaning of calendar year in section 3722(b).  Section 3722 provides, in relevant part:  "(a) At the

---

[4] Because the petition for administrative mandamus fails to state a cause of action, we need not reach Taylor's argument regarding section 3725's bond requirement.  We also do not address any of the arguments Taylor raises only in passing. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [if no legal argument with citation to authority " 'is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "].)

6

time the stop order is issued and served pursuant to Section 3710.1, the director[5] shall also issue and serve a penalty assessment order requiring the uninsured employer to pay to the director, for deposit in the State Treasury to the credit of the Uninsured Employers Fund, the sum of one thousand five hundred dollars ($1,500) per employee employed at the time the order is issued and served, as an additional penalty for being uninsured at that time *or issue and serve a penalty assessment order pursuant to subdivision (*b*)*.

"(b) At any time that the director determines that an employer has been uninsured for a period in excess of one week *during the calendar year preceding the determination*, the director shall issue and serve a penalty assessment order requiring the uninsured employer to pay to the director, for deposit in the State Treasury to the credit of the Uninsured Employers Fund, the greater of (1) twice the amount the employer would have paid in workers' compensation premiums during the period the employer was uninsured, determined according to subdivision (c), or (2) the sum of one thousand five hundred dollars ($1,500) per employee employed during the period the employer was uninsured. A penalty assessment issued and served by the director pursuant to this subdivision shall be in lieu of, and not in addition to, any other penalty issued and served by the director pursuant to subdivision (a).

"(c) If the employer is currently insured, or becomes insured during the period during which the penalty under subdivision (b) is being determined, the amount an employer would have paid in workers' compensation premiums shall be calculated by prorating the current premium for the number of weeks the employer was uninsured *within the three-year period immediately prior* to the date the penalty assessment is issued. If the employer is uninsured at the time the penalty under subdivision (b) is being determined, the amount an employer would have paid in workers' compensation premiums shall be the product of the employer's payroll for all periods of time the employer was uninsured *within the three-year period* immediately prior to the date the

---

5 " '[D]irector' means the Director of Industrial Relations or the director's designated agents." (§ 3710, subd. (c).)

7

penalty assessment is issued multiplied by a rate determined in accordance with regulations that may be adopted by the director or, if none has been adopted, the manual rate or rates of the State Compensation Insurance Fund for the employer's governing classification pursuant to the standard classification system approved by the Insurance Commissioner." (Italics added.)

It is undisputed that the date of "the determination" is the date the penalty assessment citation issued—in this case, February 27, 2015. Taylor maintains the term calendar year necessarily means January 1, 2014, through December 31, 2014, and that "this is the *required* statutory interpretation of this term no matter how absurd the result of that interpretation . . . ." (Boldface & underlining omitted.) DLSE, on the other hand, insists calendar year means "the one-year period immediately before the date that the director determines that an employer is uninsured"—or, in this case, February 27, 2014, to February 27, 2015. DLSE urges us to analogize section 3722(b) to "a one year statute of limitations on issuing a citation." (See Code. Civ. Proc., §340, subds. (a), (b).) In other words, section 3722(b) allows a citation to be issued "if the DLSE determines that an employer was uninsured [in excess of one week] during the *past year*, whether or not the employer subsequently obtains insurance." (Italics added.)

It may appear we need not construe the meaning of calendar year in order to decide this appeal. The trial court was certainly correct that under either construction of the statute, Taylor was properly subject to a penalty under section 3722(b). Aaron's Automotive was uninsured for over three years consecutively and consequently was uninsured for more than one week during the 12 months preceding the determination, as well as the period between January 1 and December 31, 2014. Thus, even if Taylor's statutory interpretation is correct, the penalty assessed by DLSE in this case would not be invalidated. Nor would the amount of the penalty imposed be any less. In their equal protection arguments, Taylor and DLSE agree that, under section 3722(b) and subdivision (c) of section 3722, the calendar year that triggers the penalty is distinct from the period of time considered to calculate the penalty. As phrased by DLSE, "failure to insure in the calendar year preceding the determination is only the triggering event. . . .

8

The penalty is then assessed based on the length of the violation going back a maximum of three years. [(§ 3722, subds. (b), (c).)]" Or, as stated by Taylor, "the penalty is imposed because of acts and/or omissions in the calendar year preceding the issuance and service of the penalty assessment order, while the penalty assessed, on the other hand, is calculated by looking at matters respecting the three years preceding the service and issuance of the Penalty Assessment Order." (Italics, boldface & underlining omitted.) We nevertheless resolve the statutory construction issue because it significantly affects our analysis in the unpublished portion of our opinion, specifically with respect to Taylor's equal protection challenge.

" 'Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent. [Citation.] Intent is determined foremost by the plain meaning of the statutory language. If the language is clear and unambiguous, there is no need for judicial construction. When the language is reasonably susceptible of more than one meaning, it is proper to examine a variety of extrinsic aids in an effort to discern the intended meaning. We may consider, for example, the statutory scheme, the apparent purposes underlying the statute and the presence (or absence) of instructive legislative history.' " (*Starving Students, supra,* 125 Cal.App.4th at p. 1363; accord, *DuBois v. Workers' Comp. Appeals Bd*. (1993) 5 Cal.4th 382, 387–388.) " ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32.)

"In interpreting a statute (or a constitutional provision), we are called upon to avoid absurd results. ' . . . "Where the language of a statute is reasonably susceptible of two constructions, one which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which will be productive of absurd consequences, the former construction will be adopted. In other words, where the meaning is doubtful, any construction which would lead to absurd results should be

9

rejected . . . since absurd results are not supposed to have been contemplated by the legislature." ' " (*Gilbert v. Chiang* (2014) 227 Cal.App.4th 537, 551.)

Workers' compensation statutes "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) However, " 'the rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction.' " (*DuBois v. Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at p. 398.) "In the absence of compelling countervailing considerations, we must assume that the Legislature 'knew what it was saying and meant what it said.' " (*Tracy v. Municipal Court* (1978) 22 Cal.3d 760, 764.)

The interpretation of section 3722(b) is a question of first impression. Accordingly, Taylor relies on *Earl Ranch, Ltd. v. Industrial Acc. Com.* (1935) 4 Cal.2d 767 (*Earl Ranch*), in which our Supreme Court construed the term calendar year in an unrelated workers' compensation statute. In *Earl Ranch*, a farm laborer's workers' compensation award was annulled on the ground the agricultural employer was not covered by the Workmen's Compensation Act. (*Id.* at p. 768.) At the time, the Act automatically excluded agricultural employers, without any requirement to opt out, " ' "where the payroll of such employer *for the preceding calendar year* has not exceeded five hundred dollars." ' " (*Ibid.*, italics added.) The employee maintained "calendar year" should be construed to mean the 12 months preceding his injury on June 17, 1932. The distinction mattered because the employer acquired the ranch only two months before the injury and had no payroll whatsoever before April 1, 1932. In the two months after acquisition, the employer's payroll exceeded the threshold sum. (*Ibid.*)

The *Earl Ranch* court rejected the employee's interpretation, stating " '[t]he words "calendar year" mean from January 1 to December 31 next, inclusive.' " (*Earl Ranch, supra,* 4 Cal.2d at pp. 768–769.) The court also emphasized it could not construe the statute in the employee's favor to avoid "an absurd result"—effectively granting a one-year period of automatic exemption to farm owners who have only recently commenced business—because to do so "would be to ignore the statute and not to construe it." (*Id.* at

10

p. 769.)  " In other words, the readily understandable term 'calendar year' is what the legislature used, and it must, under the circumstances, be taken as the expression of the legislative intent, even though the legislature may have used it without the fullest understanding of the possible consequences.  [Citations.]  It is both futile and dangerous for a court to tamper with unmistakable language of a statute in order to achieve some imagined and undisclosed legislative purpose."  (*Ibid.*)

In relying heavily on *Earl Ranch*, Taylor ignores a cardinal rule of statutory construction—that we construe words, not in isolation, but in context.  We agree with DLSE that *Earl Ranch* is distinguishable because the term calendar year was used in a different statutory context in that case.  In *Earl Ranch*, the term calendar year was used without reference to any specific date merely to identify a period of time in which to measure payroll.  (*Earl Ranch, supra*, 4 Cal.2d at p. 768; accord, Annot., What 12-Month Period Constitutes "Year" or "Calendar Year" as Used in Public Enactment, Contract, or Other Written Instrument (1966) 5 A.L.R.3d 584, 588 (hereafter Annot.).)  In contrast, in section 3722(b), calendar year is used to measure a period of time *preceding* a specific reference date.

We simply cannot agree with the proposition Taylor attributes to *Earl Ranch*—that the meaning of calendar year is always free from ambiguity.  In fact, the dictionary gives two meanings for the term:  "1:  a period of a year beginning and ending with the dates that are conventionally accepted as marking the beginning and end of a numbered year [¶] 2:  *a period of time equal in length to that of the year in the calendar conventionally in use*."  (Merriam-Webster Dict. Online (2016) <http://www.merriam-webster.com/dictionary/calendar%20year> [as of Oct. 26, 2016], italics added.)  Recognizing the latter meaning, other courts have considered "calendar year" and "year" to be synonymous.  (See *United States v. Tawab* (9th Cir. 1993) 984 F.2d 1533, 1534; *Bd. of Ed. of Manchester Tp. v. Raubinger* (N.J.Super.Ct.App.Div. 1963) 187 A.2d 614, 617–620 [construing a statute providing for tenure after an employment period of "three consecutive calendar years" to mean employment for 36 months]; accord, Annot., *supra*, 5 A.L.R.3d at p. 588.)

11

We cannot construe the term calendar year without considering the broader statutory context in which it is used.  (See *Phelps v. Stostad, supra,* 16 Cal.4th at p. 32; *Hops v. Poe* (1914) 25 Cal.App. 451, 453–454 [meaning of "year" is " 'dependent upon the subject matter and the connection in which it is used' "].)  Because the term calendar year is directly linked to "preceding the determination"—and the determination date could obviously occur in any month of the year—the statutory language is most reasonably construed to mean the 12-month period preceding the determination.

Nor is our construction absurd or inconsistent with the apparent purpose of section 3722(b).  As previously mentioned, section 3700 requires employers to "secure the payment of compensation" to employees by obtaining workers' compensation insurance.  "The securing of the payment of compensation in a way provided in this division is essential to the functioning of the expressly declared social public policy of this state in the matter of workers' compensation."  (§ 3712, subd. (a).)  An employer who fails to have workers' compensation coverage in effect on a particular date of inspection may be subject to penalties under section 3722, subdivision (a).  Subdivisions (b) and (c) of section 3722, quite clearly were enacted to provide harsher penalties for those employers who have more egregiously failed or refused to obtain workers' compensation insurance.  (Legis. Counsel's Dig., Rep. on Assem. Bill No. 749 (2001–2002 Reg. Sess.) p. 5 ["bill would authorize the director to assess a higher amount upon a determination that an employer has been uninsured for a period in excess of one week during the calendar year preceding the determination"]; Sen. Com. on Labor & Industrial Relations, Rep. on Sen. Bill No. 313 (2009–2010 Reg. Sess.) as amended Apr. 27, 2009, p. 5 ["author and supporters of SB 313 believe the bill will create a more effective penalty structure for employers that fail to maintain workers' compensation coverage . . . [, arguing] that under the current scheme employers may face a penalty that is less than what their workers' compensation costs would have [been], thus creating a disincentive to have coverage"]; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 313 (2009–2010 Reg. Sess.) as amended Sept. 2, 2009, p. 4.)

"An important function of penalty assessment under the challenged statutory scheme is to help finance the California Uninsured Employers Fund, a source of funds for injured workers whose employers have failed or refused either to obtain workers' compensation insurance coverage, or to qualify as self-insurers for the employers' liability." (*Bradshaw v. Park* (1994) 29 Cal.App.4th 1267, 1275–1276, citing *DuBois v. Workers' Comp. Appeals Bd., supra*, 5 Cal.4th at pp. 388–389.) While Taylor is subject to section 3722(b) penalties regardless of how we construe the term, it would not further this finance function to exempt another employer from section 3722(b) penalties if they were determined on February 27, 2015, to be uninsured in excess of one week within January 2015. (See Sen. Com. on Labor & Industrial Relations, Rep. on Sen. Bill No. 313 (2009–2010 Reg. Sess.) as amended Apr. 27, 2009, p. 5 ["SB 313 will reduce the amount law-abiding employers have to pay to the [Uninsured Employers Benefit Trust Fund]"].)

Taylor maintains the 2009 amendment to section 3722 makes clear the Legislature knew how to differentiate between a calendar year and a "one-year period" when it used the term "three-year period" in subdivision (c) to delineate the "look back" period for penalties imposed under subdivision (b). (See Stats. 2009, ch. 640, § 1 ["amount an employer would have paid in workers' compensation premiums shall be calculated by prorating the current premium for the number of weeks the employer was uninsured within the *three-year period immediately* prior to the date the penalty assessment is issued" (italics added)].) We do not view this amendment as Taylor does, and, in fact, believe subdivision (c) bolsters our resolution of the ambiguity in subdivision (b). It is unlikely that the Legislature intended that, using this case as an example, subdivision (b) would only be triggered by Taylor's period of uninsurance between January 1 and December 31, 2014, but also intend penalties should be collected for the period Taylor was uninsured in January 2015.

For all of these reasons, we conclude calendar year, as used in section 3722(b), means the 12-month period immediately preceding the determination. In this case, a triggering event of uninsurance did occur between February 27, 2014, and February 27,

13

2015. Therefore, our construction of the statute does not in any way invalidate the penalty imposed.

C.    *Excessive Fines Clause of Eighth Amendment*\*

Next, Taylor maintains the penalty assessed violates state and federal constitutional provisions barring excessive fines.[6] (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.)   The Eighth Amendment provides:  "Excessive bail shall not be required,

---

\* See footnote, *ante*, page 1.

[6] Taylor contends that section 3722(b) is unconstitutional both facially and as applied.  "Facial challenges consider only the text of a measure, not the application of the measure to particular circumstances." (*San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 803; accord, *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  "Facial challenges to legislation are the most difficult to successfully pursue because the challenger must demonstrate that ' " 'no set of circumstances exists under which the [law] would be valid.' " [Citation.]' [Citation.]  Thus, the moving party must establish that the challenged legislation inevitably is in total, fatal conflict with applicable prohibitions." (*Sierra Club v. Napa County Bd. of Supervisors* (2012) 205 Cal.App.4th 162, 173.)  "A penalty provision . . . is facially constitutional if under some circumstances, the application of the penalty would be constitutional.  [Citation.] '[A] statute is presumed to be constitutional and . . . it must be upheld unless its unconstitutionality "clearly, positively and unmistakably appears." [Citations.]' [Citation.]  Where a penal statute may be subject to both constitutional and unconstitutional applications, courts evaluate the propriety of the sanction on a case-by-case basis." (*Starving Students, supra*, 125 Cal.App.4th at p. 1368.)  An "as applied" challenge "contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (*Tobe*, at p. 1084.)

Facial challenges to a statute or ordinance may be brought by action for declaratory relief, which Taylor did not file.  However, Taylor's challenge appears to be primarily an "as applied" challenge to the penalty actually imposed by the administrative agency, which was raised properly in a petition for writ of administrative mandamus to review the final administrative decision. (Code Civ. Proc., § 1094.5; *Pacific Shores Property Owners Assn. v. Department of Fish & Wildlife* (2016) 244 Cal.App.4th 12, 55; *Carloss v. County of Alameda* (2015) 242 Cal.App.4th 116, 126.)  When considering a general demurrer, the form of a plaintiff's pleading is unimportant.  " 'All that is required is that plaintiff state facts entitling him to some type of relief . . . .' " (*Carloss*, at p 126.)  We shall consider whether Taylor can state a claim for administrative mandamus or declaratory relief.

14

*nor excessive fines imposed*, nor cruel and unusual punishments inflicted." (Italics added.) The California Constitution contains similar protections, making a separate analysis of each provision unnecessary. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 (*R.J. Reynolds*); *City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1321 (*Sainez*).) Both the federal and California excessive fine prohibitions have been applied to civil penalties imposed by an administrative agency. (See *Pacific Gas & Electric Co. v. Public Utilities Com.* (2015) 237 Cal.App.4th 812, 863; *R.J. Reynolds,* at pp. 727–729.)

"The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.' " (*Austin v. United States* (1993) 509 U.S. 602, 609–610, italics added.) "[S]anctions frequently serve more than one purpose. We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish." (*Ibid.*) Thus, "[t]he law is settled that a civil penalty . . . , by virtue of its partially punitive purpose, is a *fine* for purposes of the constitutional protection. [Citations.] The question is whether it is *excessive*." (*Sainez, supra*, 77 Cal.App.4th at p. 1321.) " '[T]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality,' " judged by four considerations: "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay." (*R.J. Reynolds, supra,* 37 Cal.4th at p. 728.) "Ordinarily a reviewing court, having examined the relevant considerations, can decide for itself whether a fine or penalty is unconstitutionally excessive." (*Id.* at p. 731.) "[A] reviewing court 'must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.' " (*Sainez*, at p. 1322.)

The primary purpose of section 3722 is apparent—to secure obedience to section 3700's insurance mandate. (See *Starving Students, supra,* 125 Cal.App.4th at pp. 1367–1368 [" '[c]ivil penalties may have a punitive or deterrent aspect, [but] their

15

primary purpose is to secure obedience to statutes and regulations imposed to assure important public policy objectives' "].)  However, we will assume Taylor is correct in asserting section 3722(b) does not serve a solely remedial purpose.

We turn to the proportionality issue, which is assessed by examining Taylor's culpability, the penalty, the harm Taylor caused, other penalties for like offenses, and Taylor's ability to pay.  (*R.J. Reynolds, supra,* 37 Cal.4th at p. 728; *Sainez, supra*, 77 Cal.App.4th at p. 1322.)  Taylor has not meet the burden to show error.  The record shows Aaron's Automotive is a small employer.  However, Taylor does not argue or plead an inability to pay or limited culpability.  Instead, Taylor asserts the fine is excessive because the business has been "adjudged to be liable for a penalty that is roughly 152 times the amount of the reasons for imposition of the penalty."  The argument is specious.  Section 3722(b)'s triggering event may be uninsurance "for a period in excess of one week [in the preceding 12 months]," but that does not mean that the only period of uninsurance (and corresponding competitive advantage) that can be penalized is one week and a day.  The penalty under subdivisions (b) and (c) of section 3722, necessarily relates to the employers' *entire* period of uninsurance within the past three years.  The penalty imposed is twice the amount of premiums Aaron's Automotive would have paid within that period in compliance with section 3700.  (§ 3722(b).)

Taylor also points out that the *Starving Students* court, in rejecting a similar due process challenge to a penalty imposed under section 3722, subdivision (a), relied on a favorable comparison of the penalties with those imposed under section 3700.5. (*Starving Students, supra,* 125 Cal.App.4th at p. 1369.)  Taylor attempts to distinguish *Starving Students* by suggesting section 3722(b) subjects him to more onerous punishment than section 3700.5.  This is not so.  Section 3700.5, subdivision (a), provides that an employer "who knew, or because of his or her knowledge or experience should reasonably expected to have known, of the obligation to secure the payment of compensation" may be found guilty of a misdemeanor and punished by *imprisonment* in the county jail for up to one year or "by a fine of *up to double the amount of premium . . . that would otherwise have been due to secure the payment of compensation *during the*

*time compensation was not secured*, but not less than ten thousand dollars ($10,000), *or by both that imprisonment and fine*." (Italics added.)

We agree with Taylor that *Starving Students* is not on all fours with this case in that it considered a penalty imposed under section 3722, subdivision (a), rather than section 3722(b). (*Starving Students, supra,* 125 Cal.App.4th at pp. 1368–1369.) However, the statutory scheme clearly takes into consideration an employer's culpability by reserving criminal punishment for the most culpable offenders and correlating administrative penalties, under section 3722, subdivisions (a), (b), and (c), to the amount of time an employer was uninsured and the corresponding competitive advantage it obtained. "The penalty assessed under . . . section 3722 for failure to secure workers' compensation insurance from an authorized insurer is paid to the State Treasury to fund the Uninsured Employers Fund. Thus, there is no danger of creating a windfall against public policy." (*Starving Students,* at p. 1370.) In our independent judgment, the penalty imposed is not grossly disproportionate. Taylor has failed to demonstrate the penalty imposed was constitutionally excessive.[7] Taylor's excessive fine claim fails both as a facial and an as-applied challenge.

---

[7] Given our conclusion, we need not separately analyze Taylor's due process challenge. When a case involves a civil penalty subject both to the state and the federal constitutional bans on excessive fines as well as state and federal provisions barring violations of due process, "[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process." (*R.J. Reynolds, supra,* 37 Cal.4th at p. 728.) For example, *Starving Students* noted that courts considering a due process challenge to a penalty assessment "have examined whether (1) the amount of the statutory penalty is mandatory; (2) the duration of the penalty is potentially unlimited; (3) the prohibited acts encompass a broad range of culpable conduct and widely divergent injuries; (4) the penalty is imposed equally on those with different levels of sophistication and financial strength; and (5) the penalty is potentially more severe than that provided by the Legislature for other more serious transgressions under the statutory scheme." (*Starving Students, supra*, 125 Cal.App.4th at p. 1368.)

D.    *Equal Protection**

Taylor next challenges section 3722(b) on the ground that it violates equal protection, either on its face or as applied.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7 & art. IV, § 16, subd. (a).)  Again, we do not analyze the state and federal claims separately, as "equal protection provisions in the California Constitution 'have been generally thought . . . to be substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution.' " (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571, fn. omitted.)

" ' "Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction." ' [Citation.]  'The constitutional guarantee of equal protection of the laws has been defined to mean that all persons under similar circumstances are given " 'equal protection and security in the enjoyment of personal and civil rights . . . and the prevention and redress of wrongs . . . .' " [Citation.]  The concept " ' "compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' " [Citation.]' [Citation.]  ' "Under the equal protection clause, '[a] classification "must be reasonable, not arbitrary, and must rest upon some grounds of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' " ' " (*People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1382–1383.)  A corporation is a "person" entitled to equal protection.  (*Garcia v. Four Points Sheraton LAX* (2010) 188 Cal.App.4th 364, 382.)

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." [Citations.]' [Citations.]  'The "similarly situated" prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are

---

* See footnote, *ante*, page 1.

18

sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.' [Citation.] 'Persons who are similarly situated must be treated alike. [Citation.] There is, however, no requirement that persons in different circumstances must be treated as if their situations were similar.' " (*People v. Rhodes, supra,* 126 Cal.App.4th at p. 1383, italics omitted; accord, *Manduley v. Superior Court, supra,* 27 Cal.4th at p. 568.) " 'If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold.' " (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 434.) The next step is to determine the appropriate level of scrutiny. (*Id.* at p. 435.) "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." (*Romer v. Evans* (1996) 517 U.S. 620, 631.)

Taylor's equal protection challenge fails because a classification that affects two or more similarly situated groups in an unequal manner has not been shown. Taylor asserts that even if DLSE's interpretation of calendar year is upheld, two classes are created by section 3722: (1) employers who were uninsured for more than one week during the one-year period preceding the determination; and (2) employers who were insured during that same one-year period. It is self-evident that these two groups are not similarly situated. One has complied with section 3700's mandate and the other has not. It is irrelevant that, as Taylor points out, employers in group two may have been uninsured in excess of a week more than one year before "the determination." Section 3722 encourages employers to comply with section 3700. The Legislature can rationally choose to treat more favorably those employers who were once uninsured but have since obtained and continuously maintained insurance for more than one year.

Taylor also insists that employers who are penalized under section 3722, subdivision (a), are similarly situated to those penalized under section 3722(b). We disagree. Under section 3722, subdivision (a), lesser penalties are applied to lapses of less than one week because the violation period is shorter. If the period is greater than

19

one week, the penalties in section 3722(b) may be imposed.  It is not irrational to require employers with more egregious violations to pay higher penalties.

An employer eligible for a penalty under section 3722(b) is not similarly situated to an employer eligible only for a penalty under section 3722, subdivision (a) or those who have been continuously insured.  " ' " 'The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' " ' " (*People v. Petronella* (2013) 218 Cal.App.4th 945, 956.)  Taylor has not demonstrated a valid equal protection challenge, either facially or as applied.

The trial court correctly determined that section 3722(b) does not violate the California or United States constitutions and did not err in sustaining the demurrer.

## IV.   DISPOSITION

The judgment is affirmed.  DLSE is entitled to its costs on appeal.


_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.

Superior Court of Solano County, No. FCS045423, Harry S. Kinnicutt, Judge.

Arthur Samuel Humphrey for Plaintiffs and Appellants.

Susan A. Dovi for Defendant and Respondent.